**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BP CORPORATION NORTH AMERICA INC. SAVINGS PLAN INVESTMENT OVERSIGHT COMMITTEE serving in its capacity as a named fiduciary of the BP Employee Savings Plan, the BP Capital Accumulation Plan, the BP DirectSave Plan, the BP Employee Savings Plan of Puerto Rico, and the BP Partnership Savings Plan under the BP Master Trust for Employee Savings Plans and the BP Solar Employee Savings Plan under the Trust for the BP Solar Employee Savings Plan, and BP CORPORATION NORTH AMERICA INC. INVESTMENT COMMITTEE serving in its capacity as a named fiduciary of the BP Retirement Accumulation Plan and the Enstar Corporation Retirement Plan under the BP Master Trust for Employee Pension Plans,<br><br>    Plaintiffs,<br><br>  v.<br><br>NORTHERN TRUST INVESTMENTS, N.A. and THE NORTHERN TRUST COMPANY,<br><br>    Defendants. | FILED: OCTOBER 21, 2008<br>08CV6029<br>JUDGE HIBBLER<br>MAGISTRATE JUDGE DENLOW<br>CH<br><br><br><br>JURY TRIAL DEMANDED<br><br><br>CIVIL ACTION NO. _____ |

## COMPLAINT

Plaintiffs BP Corporation North America Inc. Savings Plan Investment Oversight

Committee serving in its capacity as a named fiduciary of the BP Employee Savings Plan, the BP

Capital Accumulation Plan, the BP DirectSave Plan, the BP Employee Savings Plan of Puerto

Rico, and the BP Partnership Savings Plan under the BP Master Trust for Employee Savings

Plans and the BP Solar Employee Savings Plan under the Trust for the BP Solar Employee

Savings Plan ("the Savings Plans Committee"), and BP Corporation North America Inc.

Investment Committee serving in its capacity as a named fiduciary of the BP Retirement

Accumulation Plan and the Enstar Corporation Retirement Plan under the BP Master Trust for

Employee Pension Plans ("the Investment Committee" and, together with the Savings Plans Committee, the "Plan Committees"), by and through their undersigned attorneys, complain of Defendants Northern Trust Investments, N.A. ("NTI") and The Northern Trust Company ("NTC"), as follows:

## Summary of the Action

1. This is an action for equitable relief and damages under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq., and various Investment Manager Agreements between the Plan Committees and NTI. The Defendants, in violation of their fiduciary duties under ERISA, have engaged in investment activities, namely, a securities lending program, which involved inappropriate risk and led to inappropriate losses in NTI's investment funds offered through the savings plans and the pension plans identified above (hereinafter, collectively, "the Plans"). This action seeks preliminary injunctive relief ordering the immediate return of Plan assets to prevent further incalculable losses as a result of Defendants' negligent investment strategy based on a securities lending program. Further, this action seeks to recover, for the benefit of the Plaintiffs' Plans, plan assets wrongfully retained by Defendants, as well as damages and other relief related to Defendants' breaches of their fiduciary duties to the Plans.

2. Defendants' acts and omissions, as hereinafter described, are breaches of Investment Manager Agreements, and of fiduciary duties under § 404(a) of ERISA, which entitle the Plan Committees, pursuant to § 502(a)(2) of ERISA, to recover appropriate relief under § 409 of ERISA and, pursuant to § 502(a)(3) of ERISA, to enjoin acts which violate ERISA. *See* 29 U.S.C. §§ 1104(2), 1132(a)(2)-(3), 1109(2).

**The Parties**

3. Plaintiff BP Corporation North America Inc. Savings Plan Investment Oversight Committee serving in its capacity as a named fiduciary of the BP Employee Savings Plan, the BP Capital Accumulation Plan, the BP DirectSave Plan, the BP Employee Savings Plan of Puerto Rico, and the BP Partnership Savings Plan under the BP Master Trust for Employee Savings Plans and the BP Solar Employee Savings Plan under the Trust for the BP Solar Employee Savings Plan has discretionary authority for the investments of such trusts and is a fiduciary under ERISA. These savings plans are defined contribution plans which allow participants to direct how their contributions will be invested among various investment options.

4. Plaintiff BP Corporation North America Inc. Investment Committee serving in its capacity as a named fiduciary of the BP Retirement Accumulation Plan and the Enstar Corporation Retirement Plan under the BP Master Trust for Employee Pension Plans has discretionary authority for the investments of such trusts and is a fiduciary under ERISA. These pension plans are defined benefit plans designed to provide retirement benefits for employees and their beneficiaries.

5. Defendant Northern Trust Investments, N.A. is an affiliate of Defendant The Northern Trust Company. Northern Trust Investments, N.A. is a national banking association with its principal place of business in Chicago, Illinois and is a fiduciary with respect to the Plans.

6. Defendant The Northern Trust Company is an Illinois state banking corporation with its principal place of business in Chicago, Illinois. Directly and/or through its affiliates, The Northern Trust Company provides investment products, including the products provided by NTI to the Plans and is a fiduciary or a party in interest with respect to the Plans.

**Jurisdiction and Venue**

7. The Plan Committees seek relief on behalf of the Plans pursuant to the civil enforcement remedies provided by ERISA against fiduciaries pursuant to §§ 409 and 502(a) of ERISA (29 U.S.C. §§ 1109, 1132). This Court has jurisdiction over this action and the Defendants pursuant to 28 U.S.C. § 1331 and § 502(e)(1) and (2) of ERISA (29 U.S.C. § 1132(e)(1) and (2)). This Court has supplemental jurisdiction over the contract claims pursuant to 28 U.S.C. § 1367.

8. Venue of this action in the Northern District of Illinois is proper pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391, because Defendants' breaches took place in the district, and Defendants may be found in the district.

**Common Allegations**

9. The Savings Plan Committee and NTI are parties to an Investment Manager Agreement, dated as of January 1, 2008, regarding certain assets of the BP Solar Employee Savings Plan held in trust in the Trust for the BP Solar Employee Savings Plan ("the Solar IA").

10. BP Corporation North America Inc. (f/k/a BP Amoco Corporation), for the benefit of The Savings Plan Committee, and NTI are parties to an Investment Manager Agreement, pursuant to an Assignment and Assumption Agreement dated on or about November 25, 2002, regarding certain assets of the BP Employee Savings Plans held in trust in the BP Master Trust for Employee Savings Plans ("the Savings Plan IA").

11. BP Corporation North America Inc., for the limited purposes described in the agreement, the Investment Committee of BP Corporation North America Inc. and NTI are parties to an Investment Manager Agreement, dated as of February 28, 2008, regarding certain assets of the BP Pension Plans held in the BP Master Trust for Employee Pension Plans ("the Pension Plan IA"). (The Solar IA, the Savings Plan IA and the Pension Plan IA are collectively referred

4

to herein as "the Investment Agreements." The Trust for the BP Solar Employee Savings Plan, the BP Master Trust for Employee Savings Plans, and the BP Master Trust for Employee Pension Plans are collectively referred to herein as the "BP Trusts".)

12. The assets of the BP Trusts managed by NTI pursuant to the Investment Agreements are held by NTI in trust, and invested for the benefit of the BP Plans, in four collective investment funds established pursuant to a Declaration of Trust of the Northern Trust Global Investments Quantitative Management Collective Funds Trust ("the NTGI Trust"), effective as of January 31, 2006 (the "Collective Funds").

13. Each of the four (4) Collective Funds in which the BP Plans' assets are invested ("the Index Funds") is managed by NTI and benchmarked to a different stock or bond index. For example, the Small Cap Equity Index Fund is benchmarked against the Russell 2000 Index. The three other Index Funds are benchmarked against the S&P 500 Index, the Lehman Brothers 1-to-3 year Government Bond Index, and the Lehman Brothers Aggregate Bond Index, respectively. The Index Funds have not been performing consistently with their respective benchmarks on account of losses related to NTI's securities lending activities. As a result of the losses NTI has incurred through its securities lending activities, among other reasons, the Savings Plans Committee halted any additional BP participant contributions to and transfers into the Index Funds as of October 15, 2008, and the Plan Committees demanded that NTI return the Plans' assets excluding the effects of the securities lending program so that they could be re-invested in funds that would not engage in securities lending.

14. Pursuant to the Investment Agreements, NTI:

(A)  was appointed to be the "Investment Manager" of "Investment Accounts" identified by the Plans for investment by NTI, and NTI accepted such appointment;

(B) acknowledged that the BP Trusts and the Investment Accounts were subject to the provisions of ERISA, and that NTI is a fiduciary, as defined in ERISA, with respect to the BP Trusts and the Investment Accounts;

(C) agreed that its obligation to diversify the Investment Accounts was subject to the Investment Guidelines contained in the Investment Agreements; and

(D) agreed to notify the Plan Committees in writing in the event that the Investment Manager determined that there existed any actual or perceived conflict of interest which affected the Investment Accounts.

15. Pursuant to the Investment Guidelines reflected in the Investment Agreements, NTI was authorized to lend securities from the Collective Funds, in which the Plans' assets were invested. NTI stated to the Plan Committees that the purpose of the securities lending program was to earn a return through investment of the cash collateral received from borrowers of securities, which would allow: (a) NTI to offset its expenses under the Investment Agreements and (b) the Index Funds to better match the performance of their respective benchmark indices. NTI appointed NTC as the securities lending agent for the Collective Funds and delegated to NTC the discretion to manage the securities lending activities.

16. Pursuant to the securities lending program, NTC, as agent, loaned securities purchased for the benefit of the Index Funds through the NTI-managed Collective Funds to borrowers who, in exchange, provided cash collateral as security for the return of the loaned securities. NTI then invested the cash collateral in other collective funds established under the NTGI Trust and managed by NTI (the "Collateral Funds"). NTI shared in a monthly fee equal to a percentage of the net income earned by NTC through the securities lending; however, NTI does not share in any realized losses on the collateral investments; the entire realized loss in the Collateral Funds is allocated pro rata to the relevant collective funds (and indirectly the Index Funds) and other investors in the Collateral Funds. The structure of the securities lending

6

program was devised pursuant to a Securities Lending Authorization Agreement between NTI and NTC, which NTI entered into in its capacity as trustee for the NTGI Trust.

17. Defendants operated the securities lending program in an imprudent manner without notice to the Plan Committees in that a high percentage of the securities in the Collective Funds (and indirectly the Index Funds) were loaned and the cash collateral for the loans was invested in Collateral Funds whose assets carried a higher aggregate risk than the aggregate risk carried by the Collective Funds (and indirectly the Index Funds) assets which were loaned.

18. Certain of the investments in the Collateral Funds which NTI made with cash collateral received from securities borrowers: (a) have defaulted ("the Defaulted Securities"); and (b) have been marked down in value by NTI and/or, on information and belief, have become so illiquid that such investments only could be sold, if at all, substantially below the values at which they are carried by the Collateral Funds ("the Illiquid Securities").  (The Defaulted Securities and the Illiquid Securities are hereinafter referred to as "the Impaired Securities.")  As a result, NTI has: (a) booked a loss to certain Collective Funds (and, indirectly, to the Index Funds) reflecting a share of the loss attributable to the Defaulted Securities, (b) allocated the Defaulted Securities to a liquidating trust and assigned to the relevant Collective Funds (and indirectly the Index Funds) interests in the liquidating trust; and (c) issued an account payable from certain the Collective Funds (and indirectly the Index Funds) to the relevant Collateral Funds reflecting the reduced value at which certain Illiquid Securities are being held on the records of the relevant Collateral Funds.  On information and belief, the Collective Funds (and indirectly the Index Funds) are at significant risk of incurring additional losses resulting from (i) additional defaults of securities held by the Collateral Funds, (ii) additional declines in the value

of securities held by the Collateral Funds and (iii) the realization of losses upon the sale of Illiquid Securities held by the Collateral Funds necessitated by the repayment of securities loans.

19. Given the losses incurred by the Plans as a result of NTI's investment of cash collateral received from securities borrowers, the risk of additional losses, and other reasons, the Plan Committees have requested withdrawal from the NTGI Trust of all amounts invested in any Collective Fund of the NTGI Trust reflecting the Plans' interest in an Index Fund. The Plan Committees have further requested, pursuant to their rights under their respective Investment Agreements, that the distribution of the Plans' assets be in cash in an amount reflecting the value of the Investment Accounts, excluding any effects of securities lending or investment in cash collateral pools or funds supporting securities lending.

20. NTI has refused to distribute the Plans' assets in cash, and, instead, informed the Plan Committees that NTI's distribution would include interests in the Impaired Securities, and, thus, would not give the Plans only cash and the in-kind securities in which the Plans' assets were to be invested under the applicable Investment Guidelines of the Investment Agreements. Accordingly, NTI's distribution would provide the Plans with interests in a substantial amount of securities from the Collateral Funds, including interests in the Impaired Securities which are not part of the relevant indices specified in the Investment Guidelines. NTI's distribution would cause further incalculable losses to the Plans because, among other reasons, the Impaired Securities NTI would provide are, on information and belief, illiquid or nearly so. Even if they could be sold in this economic environment so that the Plans could purchase new securities which fall within the Investment Guidelines of the Investment Agreements, the Plans likely would take substantial losses from the carrying book-value NTI has assigned these assets.

## ERISA Requirements

21. Section 404(a)(1) of ERISA provides, in pertinent part, that

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
>> (A) for the exclusive purpose of:
>>
>>> (i) providing benefits to participants and their beneficiaries; and
>>>
>>> (ii) defraying reasonable expenses of administering the plan;
>>
>> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>>
>> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>>
>> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

22. Section 409(a) of ERISA, 29 U.S.C. § 1109(a), titled "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

### Defendants' Fiduciary Status

23. Through their conduct, and under ERISA, each of the Defendants is a fiduciary with respect to the Plans and owed, and continues to owe, fiduciary duties to the Plans and their participants under ERISA in the manner and to the extent set forth in the Plans' documents. NTI

is liable under the Investment Agreements for any acts or omissions of NTC under the authority which NTI delegated to NTC.

24.     As fiduciaries, Defendants were required by § 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), to manage the Plans' investments solely in the interest of the Plans' participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

## Count I

### (Failure to Distribute Plans' Interests in the NTGI Trust in Cash or in Kind)

25.     The Plan Committees restate and incorporate the allegations contained in each paragraph above as though fully set forth herein.

26.     NTI agreed:  pursuant to Section 12 of the Investment Agreements, to return the Plans' assets in the Investment Accounts upon the Plan Committees' request as soon as practicable; pursuant to Section 20 of the Investment Agreements, to notify the Plan Committees of a conflict of interest and the measures taken to eliminate such conflict; pursuant to Section 19 of the Investment Agreements, to indemnify the Plans for breach of such obligations; and, pursuant to Section 2.03(c) of the NTGI Trust, in the exercise of its discretion in light of its fiduciary duties under the circumstances, to distribute the Plans' interests in the NTGI Trust in cash excluding any effects of securities lending or investment in cash collateral pools or funds supporting securities lending.

27.     NTI agreed, pursuant to Section 3(a) of the Investment Agreements, not to enter into any transaction not authorized by their respective Investment Guidelines (*e.g.*, by excessive participation in a securities lending program and the investment and maintenance of collateral

from the program in securities which were inappropriate under the Investment Guidelines) in a manner which caused the Investment Accounts not to achieve their respective investment objectives and, pursuant to Section 19 of the Investment Agreements, to indemnify the Plans for breach of such obligation.

28. NTI's return of the Plans' interests in the NTGI Trust, in response to the Plan Committees' exercise of their contractual rights to demand return of the assets, partially in cash, partially in kind, and partially by distribution of other assets including the Impaired Securities, would constitute a breach of Sections 12 and 20 of the Investment Agreements and Section 2.03 of the NTGI Trust (*i.e.*, the failure to return the Plans' assets in cash or in kind). Pursuant to § 404(a)(1) of ERISA, NTI's plan of distribution also constitutes a breach of NTI's fiduciary duties, including, without limitation, its duty of loyalty, in that NTI's actions are designed to shift to the Plans the losses, and the risk of future losses caused by, among other things, NTI's negligent operation of the securities lending program rather than to return to the Plans assets reflecting the value of the Investment Accounts excluding any effects of securities lending or investment in Collateral Funds.

29. As a result of the Defendants' past and continuing breaches of their fiduciary duties and the Investment Agreements, the Plan Committees, as fiduciaries of the Plans, are obligated to act to prevent Defendants' continuing breaches of their fiduciary duties and the Investment Agreements. The interests of participants in the Plans have been and will continue to be substantially and irreparably injured by Defendants' acts alleged herein. The Plans have incurred substantial losses as a result of such acts. The Plans are highly likely to continue to incur substantial losses which will be difficult, if not impossible, to calculate with precision. The rights of Plan participants to make and execute investment decisions regarding their interests in

the Plans have been and will continue to be restricted.  The Plan Committees have no remedy at law as full, complete and efficient to the ends of justice as preliminary and permanent injunctive relief to restrain such improper actions by Defendants, namely, the form of distribution of the Plans' assets from the NTGI Trust presented by Defendants, which would include the Impaired Securities.  Rather, Defendants should be ordered to distribute to the Plans in cash or in kind (*i.e.*, securities which meet the investment profiles in the Investment Guidelines for the appropriate Index Funds), as soon as possible but in no event later than the deadline set forth in the Investment Agreements, in such amounts as reflect the performance which the Index Funds would have achieved excluding any effects of securities lending or investment in cash collateral funds.

## Count II

### (Imprudent Lending of Securities)

30. The Plan Committees restate and incorporate the allegations contained in each paragraph above as though fully set forth herein.

31. Pursuant to Section 3(a) of the Investment Agreements, NTI agreed not to enter into any transaction not authorized by the Investment Guidelines which caused the Investment Accounts not to achieve their respective investment objectives and, pursuant to Section 19 of the Investment Agreements, to indemnify the Plans for breach of such obligation.  NTI violated its obligations by, among other things, (a) engaging in and maintaining excessive securities lending from the Collective Funds, (b) lending the NTGI Trust's securities to some of the same borrowers whose securities were purchased for the Collateral Funds, and (c) failing to implement adequate risk monitoring procedures and guidelines to prevent capital losses in the Collateral Funds.

32.     NTI's failure to limit the NTGI Trust's participation in securities lending despite the Plan Committees' requests that NTI do so, and its refusal to restrict such participation in the future, despite (a) the previously undisclosed risks that NTI could not distribute the Plans' assets in cash or in-kind upon the Plan Committees' withdrawal of the Plans' assets under the Investment Agreements, and (b) the inherent risks of loss associated with the NTGI Trust's aggressive securities lending activities, including lending the NTGI Trust's securities to some of the same borrowers from whom NTI purchased securities for the Collateral Funds constitute breaches of Section 3(a) of the Investment Agreements and, pursuant to § 404(a)(1) of ERISA, a breach of NTI's fiduciary duties, including, without limitation, the duties of loyalty and prudence, in that NTI's actions were designed to increase the revenues earned on securities lending, and the amount of such revenues retained by NTI or its affiliates, in negligent disregard of the risk of capital losses to the Plans.  The Plans suffered such capital losses because, among other reasons, NTI engaged in such a high level of securities lending for certain Collective Funds (and indirectly the Index Funds) and negligently loaned NTGI Trust securities to borrowers who also were debtors of the Collateral Funds.  NTI's actions have caused the Plans to suffer substantial losses on their interests in the NTGI Trust for which Defendants are obligated to indemnify the Plans under the Investment Agreements and, under § 502(a)(2) of ERISA, to restore to the Plans the assets lost due to Defendants' breaches.

## Count III

### (Imprudent Investment of Collateral Provided by Securities Borrowers)

33.     The Plan Committees restate and incorporate the allegations contained in each paragraph above as though fully set forth herein.

34. Pursuant to Section 3(a) of the Investment Agreements, NTI agreed not to enter into any transaction not authorized by the Investment Guidelines in a manner which caused the Investment Accounts not to achieve their respective investment objectives and, pursuant to Section 19 of the Investment Agreements, to indemnify the Plans for breach of such obligation. NTI violated its obligations by, among other things, investing in securities for the Collateral Funds which were inappropriate investments in light of the Investment Guidelines under the Investment Agreements.

35. NTI's failure to invest the collateral provided by securities borrowers in a prudent manner, despite the inherent risks of loss associated with its collateral investments, constitutes a breach of Section 3(a) of the Investment Agreements and, pursuant to § 404(a)(1) of ERISA, a breach of NTI's fiduciary duties, including, without limitation, the duties of loyalty and prudence, in that NTI's actions were designed to increase the revenues earned on securities lending, and the amount of such revenues retained by NTI or its affiliates, in negligent disregard of the risk of capital losses to the Plans caused by NTI's negligent investment of collateral in inappropriate securities, which breaches have caused the Plans to suffer substantial losses, and the risk of future losses, on their interests in Defaulted Securities and Illiquid Securities for which Defendants are obligated to indemnify the Plans under the Investment Agreements and, under § 502(a)(2) of ERISA, to restore to the Plans the assets lost due to Defendants' breaches.

## Count IV

### (Inadequate and Untimely Disclosure of Losses in the Securities Lending Program)

36. The Plan Committees restate and incorporate the allegations contained in each paragraph above as though fully set forth herein.

37. NTI's failure to notify the Plan Committees of the existence and the severity of losses under NTI's securities lending program until at least five (5) months after NTI became aware of the likelihood of severe losses, and NTI's repeated failures to provide information requested by the Plan Committees about the status of the securities lending program, including, without limitation, the value of the Collective Funds' (and indirectly the Index Funds') securities being lent, constitutes, pursuant to § 404(a)(1) of ERISA, a breach of NTI's fiduciary duties, including without limitation, the duties of loyalty and diligence, such that the Plan Committees were deprived of timely and complete information which would have enabled the Plan Committees to take action to reduce the effects of NTI's negligent operation of the securities lending program before additional losses were incurred.  Defendants' breaches have caused the Plans to suffer substantial losses on their interests in the NTGI Trust, and the risk of future losses, for which Defendants are obligated under § 502(a)(2) of ERISA, to restore to the Plans the assets lost due to Defendants' breaches.

### Count V
#### (Failure to Disclose NTI's Conflict of Interest Due to Excessive Lending of Securities)

38. The Plan Committees restate and incorporate the allegations contained in each paragraph above as though fully set forth herein.

39. Pursuant to Section 20 of the Investment Agreements, NTI agreed to notify the Plan Committees of any conflict of interest and the measures taken to eliminate such conflict; and, pursuant to Section 19 of the agreements, to indemnify the Plans for breach of such obligations.

40. NTI failed to notify the Plan Committees of the extent of NTI's self-interest in expanding and maintaining the securities lending program to generate increased revenue for NTI,

and to shore up the capital of other NTI-managed funds in order to attract new investors and retain current investors, because NTI only reported the high volume of securities lending once each year, or of the increased credit risk of the securities in which the collateral received from the borrowers of securities was invested. This failure to notify constitutes a breach of Section 20 of the Investment Agreements and, pursuant to § 404(a)(1) of ERISA, a breach of NTI's fiduciary duties, including without limitation, the duties of loyalty and prudence, in that NTI's actions increased the revenue which NTI or its affiliates received from the lending of securities based on the net income earned on the securities in which the collateral was invested, at no risk to NTI, but with increased risk of losses to the Plans' interests in the NTGI Trust. Defendants' breaches have caused the Plans to suffer substantial losses, and the risk of future losses, on their interests in the NTGI Trust for which Defendants are obligated to indemnify the Plans under the Investment Agreements and, under § 502(a)(2) of ERISA, to restore to the Plans the assets lost due to Defendants' breaches. The NT Defendants now face an inherent conflict of interest: *either* permit the Plans to fully withdraw as is their right and absorb potential losses in NTI's other funds caused by effecting the Plans' withdrawal *or* attempt to transfer losses from those other funds to the Plans for the benefit of other investors in those other funds.

## Count VI

### (Assigning Overstated Valuations to Assets in Which Collateral from Securities Lending Was Invested)

41.     The Plan Committees restate and incorporate the allegations contained in each paragraph above as though fully set forth herein.

42.     Pursuant to Section 7(a) of the Investment Agreements, NTI agreed to notify the Plan Committees on a daily basis of the value of a unit in each Investment Account and, pursuant to Section 19 of the agreements, to indemnify the Plans for breach of such obligation.

16

43.     NTI's failure to notify the Plan Committees in a timely manner as to the adverse effect on the value of a unit in each Investment Account caused by the Impaired Securities which the NTGI Trust held as the result of the investment of the cash collateral received as security for loans of securities to borrowers of such securities, constitutes a breach of Section 7(a) of the Investment Agreements and, pursuant to § 404(a)(1) of ERISA, a breach of NTI's fiduciary duties, including without limitation, the duty of loyalty, in that, on information and belief, NTI's actions in improperly overstating the value of the Impaired Securities not only increased NTI's management fees earned on the stated value of the Plans' assets and the revenue which NTI or its affiliates received from the lending of securities, but also increased the losses incurred on the Impaired Securities by the Plans as a result of NTI's negligent failure to notify the Plan Committees of the correct value of the Plans' interests in the NTGI Trust.  Defendants' breaches have caused the Plans to suffer substantial losses, and the risk of future losses, on their interests in the NTGI Trust for which Defendants are obligated to indemnify the Plans under the Investment Agreements and, under § 502(a)(2) of ERISA, to restore to the Plans the assets lost due to Defendants' breaches.

## Count VII

### (Investment in NTI-Managed Bond Fund to Provide Return for Bond Index Fund – Short Duration)

44.     The Plan Committees restate and incorporate the allegations contained in each paragraph above as though fully set forth herein.

45.     Pursuant to Section 3 of the Solar IA and the Savings Plan IA and Exhibit C-4 of the Investment Guidelines for the Bond Index Fund – Short Duration, one of the Investment Accounts available under those investment agreements, NTI agreed  to seek to achieve, as a performance objective, an investment return which replicated "a return of 100% of the total

return of the Lehman Brothers 1-to-3 Year Government Bond Index," and, pursuant to Section 19 of such agreements, to indemnify the Plans for breach of such obligation.

46. NTI's investment of certain collateral provided by securities borrowers in an NTI-managed bond portfolio, which contained securities with an average maturity which was longer than the average maturity for the loaned securities in the Bond Index Fund – Short Duration, to provide returns for the Bond Index Fund – Short Duration, despite the inherent risks of loss associated with investing the collateral in securities with a longer maturity than was appropriate for investments in the Bond Index Fund – Short Duration, constitutes a breach of Section 3 of the relevant Investment Agreements, the relevant Investment Guidelines and, pursuant to § 404(a)(1) of ERISA, a breach of NTI's fiduciary duties, including, without limitation, the duties of loyalty and prudence, in that NTI's actions negligently caused the Plans to suffer losses based on the lower valuations of the collateral invested in the NTI-managed bond portfolio. Defendants' breaches have caused the Plans to suffer substantial losses, and the risk of future losses, on their interests in the NTGI Trust for which Defendants are obligated to indemnify the Plans under the Solar IA and the Savings Plan IA and, under § 502(a)(2) of ERISA, to restore to the Plans the assets lost due to Defendants' breaches.

## REQUEST FOR RELIEF

Wherefore, the Plaintiffs demand judgment against Defendants NORTHERN TRUST INVESTMENTS, N.A. and THE NORTHERN TRUST COMPANY, jointly and severally, for the following relief:

(A) Find and declare that Defendants have breached the Investment Agreements, the NTGI Trust and their fiduciary duties under ERISA as described above;

(B) Pursuant to § 502(a)(3) of ERISA, injunctive relief as set forth above;

(C)  Pursuant to §§ 409(a) and 502(a)(2) of ERISA, disgorgement/restitution and/or damages as set forth above, and all other remedial relief as the Court may deem appropriate;

(D)  Pursuant to § 502(g) of ERISA, reasonable attorneys' fees and costs;

(E)  Payment to the Plans of such damages as the Plans sustained as a result of Defendants' breaches of the Investment Agreements, including losses to the Plans resulting from imprudent investment of the Plans' assets; to restore to the Plans all profits the Defendants made through use of the Plans' assets; and to restore to the Plan all profits which the Plan participants would have made if Defendants had performed their obligations under the Investment Agreements;

(F)  Pre-judgment and post-judgment interest at the maximum allowable rates; and

(G)  All such other and further relief, general or special, legal or equitable, to which the Plaintiffs may be entitled.

### Demand for Jury Trial

Plaintiffs hereby request a trial by jury.

    /s/ *Keith P. Schoeneberger*
Keith P. Schoeneberger

Michael H. King
Keith P. Schoeneberger
Therese K. Nohos
Bryan M. Westhoff
DEWEY & LEBOEUF LLP
180 North Stetson, Suite 3700
Two Prudential Plaza
Chicago, IL  60601-6710
Telephone:  312-794-8000
Facsimile:   312-794-8100

**PLAINTIFFS' COUNSEL**