**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BP CORPORATION NORTH AMERICA INC. ) | |
| SAVINGS PLAN INVESTMENT OVERSIGHT ) | |
| COMMITTEE serving in its capacity as a named ) | |
| fiduciary of the BP Employee Savings Plan, the BP ) | |
| Capital Accumulation Plan, the BP DirectSave Plan, ) | |
| the BP Employee Savings Plan of Puerto Rico, and ) | |
| the BP Partnership Savings Plan under the BP ) | Judge William J. Hibbler |
| Master Trust for Employee Savings Plans and the ) | Magistrate Judge Morton Denlow |
| BP Solar Employee Savings Plan under the Trust for ) | |
| the BP Solar Employee Savings Plan, and BP ) | |
| CORPORATION NORTH AMERICA INC. ) | |
| INVESTMENT COMMITTEE serving in its ) | |
| capacity as a named fiduciary of the BP Retirement ) | |
| Accumulation Plan and the Enstar Corporation ) | JURY TRIAL DEMANDED |
| Retirement Plan under the BP Master Trust for ) | |
| Employee Pension Plans, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. 08 C 6029 |
| v. ) | |
| ) | |
| NORTHERN TRUST INVESTMENTS, N.A. and ) | |
| THE NORTHERN TRUST COMPANY, ) | |
| ) | |
| Defendants. ) | |

## AMENDED COMPLAINT

Plaintiffs BP Corporation North America Inc. Savings Plan Investment Oversight

Committee serving in its capacity as a named fiduciary of the BP Employee Savings Plan, the BP

Capital Accumulation Plan, the BP DirectSave Plan, the BP Employee Savings Plan of Puerto

Rico, and the BP Partnership Savings Plan under the BP Master Trust for Employee Savings

Plans and the BP Solar Employee Savings Plan under the Trust for the BP Solar Employee

Savings Plan ("the Savings Plans Committee"), and BP Corporation North America Inc.

Investment Committee serving in its capacity as a named fiduciary of the BP Retirement

Accumulation Plan and the Enstar Corporation Retirement Plan under the BP Master Trust for

Employee Pension Plans ("the Investment Committee" and, together with the Savings Plans Committee, the "Plan Committees"), by and through their undersigned attorneys, complain of Defendants Northern Trust Investments, N.A. ("NTI") and The Northern Trust Company ("NTC"), as follows:

## <u>Summary of the Action</u>

1.      This is an action for equitable relief and damages under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq., and various Investment Manager Agreements between the Plan Committees and NTI.  The Defendants, in violation of their fiduciary duties under ERISA, have engaged in investment activities, namely, a securities lending program, which involved inappropriate risk and led to inappropriate losses in NTI's investment funds offered through the savings plans and the pension plans identified above (hereinafter, collectively, "the Plans").  This action seeks preliminary injunctive relief ordering the immediate return of Plan assets to prevent further incalculable losses as a result of Defendants' negligent investment strategy based on a securities lending program.  Further, this action seeks to recover, for the benefit of the Plaintiffs' Plans, plan assets wrongfully retained by Defendants, as well as damages and other relief related to Defendants' breaches of their fiduciary duties to the Plans.

2.      Defendants' acts and omissions, as hereinafter described, are breaches of Investment Manager Agreements, and of fiduciary duties under § 404(a) of ERISA and are prohibited transactions which violate § 406 of ERISA, which entitle the Plan Committees, pursuant to § 502(a)(2) of ERISA, to recover appropriate relief under § 409 of ERISA and, pursuant to § 502(a)(3) of ERISA, to enjoin acts which violate ERISA and the Plans.  *See* 29 U.S.C. §§ 1104(2), 1106, 1132(a)(2)-(3), 1109(2).

**The Parties**

3.        Plaintiff BP Corporation North America Inc. Savings Plan Investment Oversight Committee serving in its capacity as a named fiduciary of the BP Employee Savings Plan, the BP Capital Accumulation Plan, the BP DirectSave Plan, the BP Employee Savings Plan of Puerto Rico, and the BP Partnership Savings Plan under the BP Master Trust for Employee Savings Plans and the BP Solar Employee Savings Plan under the Trust for the BP Solar Employee Savings Plan has discretionary authority for the investments of such trusts and is a fiduciary under ERISA.  These savings plans are defined contribution plans which allow participants to direct how their contributions will be invested among various investment options.

4.        Plaintiff BP Corporation North America Inc. Investment Committee serving in its capacity as a named fiduciary of the BP Retirement Accumulation Plan and the Enstar Corporation Retirement Plan under the BP Master Trust for Employee Pension Plans has discretionary authority for the investments of such trusts and is a fiduciary under ERISA.  These pension plans are defined benefit plans designed to provide retirement benefits for employees and their beneficiaries.

5.        Defendant Northern Trust Investments, N.A. is an affiliate of Defendant The Northern Trust Company.  Northern Trust Investments, N.A. is a national banking association with its principal place of business in Chicago, Illinois and is a fiduciary with respect to the Plans.

6.        Defendant The Northern Trust Company is an Illinois state banking corporation with its principal place of business in Chicago, Illinois.  Directly and/or through its affiliates, The Northern Trust Company provides investment products, including the products provided by NTI to the Plans and is a fiduciary or a party in interest with respect to the Plans.

**Jurisdiction and Venue**

7.    The Plan Committees seek relief on behalf of the Plans pursuant to the civil

enforcement remedies provided by ERISA against fiduciaries pursuant to §§ 409 and 502(a) of

ERISA (29 U.S.C. §§ 1109, 1132).  This Court has jurisdiction over this action and the

Defendants pursuant to 28 U.S.C. § 1331 and § 502(e)(1) and (2) of ERISA (29 U.S.C.

§ 1132(e)(1) and (2)).  This Court has supplemental jurisdiction over the contract claims

pursuant to 28 U.S.C. § 1367.

8.    Venue of this action in the Northern District of Illinois is proper pursuant to

§ 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391, because Defendants'

breaches took place in the district, and Defendants may be found in the district.

**Common Allegations**

9.    The Savings Plan Committee and NTI are parties to an Investment Manager

Agreement, dated as of January 1, 2008, regarding certain assets of the BP Solar Employee

Savings Plan held in trust in the Trust for the BP Solar Employee Savings Plan ("the Solar

IMA").

10.    BP Corporation North America Inc. (f/k/a BP Amoco Corporation), for the

benefit of The Savings Plan Committee, and NTI are parties to an Investment Manager

Agreement, pursuant to an Assignment and Assumption Agreement dated on or about November

25, 2002, regarding certain assets of the BP Employee Savings Plans held in trust in the BP

Master Trust for Employee Savings Plans ("the Savings Plan IMA").

11.    BP Corporation North America Inc., for the limited purposes described in the

agreement, the Investment Committee of BP Corporation North America Inc. and NTI are parties

to an Investment Manager Agreement, dated as of February 28, 2008, regarding certain assets of

the BP Pension Plans held in the BP Master Trust for Employee Pension Plans ("the Pension

Plan IMA").  (The Solar IMA, the Savings Plan IMA and the Pension Plan IMA are collectively referred to herein as "the IMAs."  The Trust for the BP Solar Employee Savings Plan, the BP Master Trust for Employee Savings Plans, and the BP Master Trust for Employee Pension Plans are collectively referred to herein as the "BP Trusts".)

12.     The assets of the BP Trusts managed by NTI pursuant to the IMAs are held by NTI in trust, and invested for the benefit of the BP Plans, in four collective investment funds established pursuant to a Declaration of Trust of the Northern Trust Global Investments Quantitative Management Collective Funds Trust ("the NTGI Trust"), effective as of January 31, 2006 (the "Collective Funds").

13.     Each of the four (4) Collective Funds in which the BP Plans' assets are invested ("the Index Funds") is managed by NTI and benchmarked to a different stock or bond index.  For example, the Small Cap Equity Index Fund is benchmarked against the Russell 2000 Index.  The three other Index Funds are benchmarked against the S&P 500 Index, the Lehman Brothers 1-to-3 year Government Bond Index, and the Lehman Brothers Aggregate Bond Index, respectively. The Index Funds have not been performing consistently with their respective benchmarks on account of losses related to NTI's securities lending activities.  As a result of the losses NTI has incurred through its securities lending activities, among other reasons, the Savings Plans Committee halted any additional BP participant contributions to and transfers into the Index Funds as of October 15, 2008, and the Plan Committees demanded that NTI return the Plans' assets excluding the effects of the securities lending program so that they could be re-invested in funds that would not engage in securities lending.

14.     Pursuant to the IMAs, NTI:

(A)    was appointed to be the "Investment Manager" of "Investment Accounts" identified by the Plans for investment by NTI, and NTI accepted such appointment;

(B)    acknowledged that the BP Trusts and the Investment Accounts were subject to the provisions of ERISA, and that NTI is a fiduciary, as defined in ERISA, with respect to the BP Trusts and the Investment Accounts;

(C)    agreed that its obligation to diversify the Investment Accounts was subject to the Investment Guidelines contained in the IMAs; and

(D)    agreed to notify the Plan Committees in writing in the event that the Investment Manager determined that there existed any actual or perceived conflict of interest which affected the Investment Accounts.

15.    Pursuant to the Investment Guidelines reflected in the IMAs, NTI was authorized to lend securities from the Collective Funds, in which the Plans' assets were invested. NTI stated to the Plan Committees that the purpose of the securities lending program was to earn a return through investment of the cash collateral received from borrowers of securities, which would allow: (a) NTI to offset its expenses under the IMAs and (b) the Index Funds to better match the performance of their respective benchmark indices. NTI appointed NTC as the securities lending agent for the Collective Funds and delegated to NTC the discretion to manage the securities lending activities.

16.    Pursuant to the securities lending program, NTC, as agent, loaned securities purchased for the benefit of the Index Funds through the NTI-managed Collective Funds to borrowers who, in exchange, provided cash collateral as security for the return of the loaned securities. NTI then invested the cash collateral in at least two investment pools (the "Collateral Pools"), including a collective fund established under the NTGI Trust and managed by NTI. NTI shared in a monthly fee equal to a percentage of the net income earned by NTC through the securities lending; however, NTI does not share in any realized losses on the collateral investments; the entire realized loss in the Collateral Pools is allocated pro rata to the relevant

collective funds (and indirectly the Index Funds) and other investors in the Collateral Pools. The structure of the securities lending program was devised pursuant to a Securities Lending Authorization Agreement between NTI and NTC, which NTI entered into in its capacity as trustee for the NTGI Trust, but without properly disclosing the terms thereof to the Plans.

17.     Defendants operated the securities lending program in an imprudent manner without notice to the Plan Committees in that a high percentage of the securities in the Collective Funds (and indirectly the Index Funds) were loaned and the cash collateral for the loans was invested in Collateral Pools whose assets on the whole carried a higher aggregate risk due to their illiquidity than the aggregate risk carried by the Collective Funds (and indirectly the Index Funds) assets which were loaned.

18.     Certain of the investments in the Collateral Pools made with cash collateral received from securities borrowers: (a) have defaulted ("the Defaulted Securities"); and (b) have been marked down in value and/or, on information and belief, have become so illiquid that such investments only could be sold, if at all, substantially below the values at which they are carried by the Collateral Pools ("the Illiquid Securities"). (The Defaulted Securities and the Illiquid Securities are hereinafter referred to as "the Impaired Securities.") As a result, NTI has: (a) booked a loss to the Collective Funds (and indirectly the Index Funds) reflecting their share of the loss attributable to the Defaulted Securities, (b) allocated the Defaulted Securities to a liquidating trust and assigned to the Collective Funds (and indirectly the Index Funds) interests in the liquidating trust; and (c) issued an account payable from the Collective Funds (and indirectly the Index Funds) whose cash collateral was invested in a Collateral Pool named "Core USA," reflecting the reduced value at which certain Illiquid Securities are being held on the records of the relevant Core USA Collateral Pool. On information and belief, the Collective

Funds (and indirectly the Index Funds) are at significant risk of incurring additional losses resulting from (i) additional defaults of securities held in the Collateral Pools, (ii) additional declines in the value of securities held in the Collateral Pools and (iii) the realization of losses upon the sale of Illiquid Securities held in the Collateral Pools necessitated by the repayment of securities loans.

19.     Given the losses incurred by the Plans as a result of Defendants' investment of cash collateral received from securities borrowers, the risk of additional losses, and other reasons, the Plan Committees have requested withdrawal from the NTGI Trust of all amounts reflecting the Plans' interests in the Index Funds.  The Plan Committees have further requested, pursuant to their rights under their respective IMAs, that the distribution of the Plans' assets be in cash or in-kind securities matching the IMAs' Investment Guidelines in an amount reflecting the value of the Investment Accounts, excluding any effects of securities lending or investment in cash collateral pools or funds supporting securities lending.

20.     NTI has refused to distribute the Plans' assets in cash in a full withdrawal, and, instead, informed the Plan Committees that NTI's distribution would include interests in the Impaired Securities, and, thus, would not give the Plans only cash and the in-kind securities in which the Plans' assets were to be invested under the applicable Investment Guidelines of the IMAs.  Accordingly, NTI's distribution would provide the Plans with interests in a substantial amount of securities from the Collateral Pools, including interests in the Impaired Securities which are not part of the relevant indices specified in the Investment Guidelines.  NTI's distribution would cause further incalculable losses to the Plans because, among other reasons, the Impaired Securities NTI would provide are, on information and belief, illiquid or nearly so. Even if they could be sold in this economic environment so that the Plans could purchase new

securities which fall within the Investment Guidelines of the IMAs, the Plans likely would take

substantial losses from the carrying book-value NTI has assigned these assets.

## ERISA Requirements

21.    Section 404(a)(1) of ERISA provides, in pertinent part, that

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
>> (A) for the exclusive purpose of:
>>
>>> (i) providing benefits to participants and their beneficiaries; and
>>>
>>> (ii) defraying reasonable expenses of administering the plan;
>>
>> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>>
>> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>>
>> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

22.    Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1), provides, in pertinent part, that

> (b)    Transactions between plan and fiduciary
>
> A fiduciary with respect to a plan shall not—
>
> (1)    deal with the assets of the plan in his own interest or for his own account, . . . .

Section 409(a) of ERISA, 29 U.S.C. § 1109(a), titled "Liability for Breach of Fiduciary

Duty," provides, in pertinent part, that

[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

**Defendants' Fiduciary Status**

23.     Through their conduct, and under ERISA, each of the Defendants is a fiduciary with respect to the Plans and owed, and continues to owe, fiduciary duties to the Plans and their participants under ERISA in the manner and to the extent set forth in the Plans' documents.  NTI is liable under the IMAs for any acts or omissions of NTC under the authority which NTI delegated to NTC.

24.     As fiduciaries, Defendants were required by § 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), to manage the Plans' investments solely in the interest of the Plans' participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

**Count I**

**(Failure to Distribute Plans' Interests in the NTGI Trust in
Cash or in Kind)**

25.     The Plan Committees restate and incorporate the allegations contained in each paragraph above as though fully set forth herein.

26.     NTI agreed:  pursuant to Section 12 of the IMAs, to return the Plans' assets in the Investment Accounts upon the Plan Committees' request as soon as practicable; pursuant to Section 20 of the IMAs, to notify the Plan Committees of a conflict of interest and the measures taken to eliminate such conflict; pursuant to Section 19 of the IMAs, to indemnify the Plans for

breach of such obligations; and, pursuant to Section 2.03(c) of the NTGI Trust, in the exercise of its discretion in light of its fiduciary duties under the circumstances, to distribute the Plans' interests in the NTGI Trust in cash or in-kind securities, excluding any effects of securities lending or investment in cash collateral pools or funds supporting securities lending.

27.     NTI agreed, pursuant to Section 3(a) of the IMAs, not to enter into any transaction not authorized by their respective Investment Guidelines (*e.g.*, by excessive participation in a securities lending program and the investment of collateral from the program in securities which were inappropriate under the Investment Guidelines) in a manner which caused the Investment Accounts not to achieve their respective investment objectives and, pursuant to Section 19 of the IMAs, to indemnify the Plans for breach of such obligation.

28.     NTI's return of the Plans' interests in the NTGI Trust, in response to the Plan Committees' exercise of their contractual rights to demand return of the assets, partially in cash, partially in kind, and partially by distribution of other assets including the Impaired Securities, would constitute a breach of Sections 12 and 20 of the IMAs and Section 2.03 of the NTGI Trust (*i.e.*, the failure to return the Plans' assets in cash or in kind).  Pursuant to § 404(a)(1) of ERISA, NTI's plan of distribution also constitutes a breach of NTI's fiduciary duties, including, without limitation, its duty of loyalty, in that NTI's actions are designed to shift to the Plans the losses, and the risk of future losses, caused by, among other things, Defendants' negligent operation of the securities lending program rather than to return to the Plans assets reflecting the value of the Investment Accounts excluding any effects of securities lending or investment in Collateral Pools.

29.     As a result of the Defendants' past and continuing breaches of their fiduciary duties and the IMAs, the Plan Committees, as fiduciaries of the Plans, are obligated to act to

prevent Defendants' continuing breaches of their fiduciary duties and the IMAs. The interests of participants in the Plans have been and will continue to be substantially and irreparably injured by Defendants' acts alleged herein. The Plans have incurred substantial losses as a result of such acts. The Plans are highly likely to continue to incur substantial losses which will be difficult, if not impossible, to calculate with precision. The rights of Plan participants to make and execute investment decisions regarding their interests in the Plans may be jeopardized. The Plan Committees have no remedy at law as full, complete and efficient to the ends of justice as preliminary and permanent injunctive relief to restrain such improper actions by Defendants, namely, the form of distribution of the Plans' assets from the NTGI Trust presented by Defendants, which would include the Impaired Securities. Rather, Defendants should be ordered to distribute to the Plans in cash or in kind (*i.e.*, securities which meet the investment profiles in the Investment Guidelines for the appropriate Index Funds), as soon as possible but in no event later than the deadline set forth in the IMAs, in such amounts as reflect the performance which the Index Funds would have achieved excluding any effects of securities lending or investment in cash collateral funds from the date the Plan Committees made their withdrawal demand to the date the cash or in-kind securities are returned to the Plans upon entry of judgment.

## Count II

### (Imprudent Lending of Securities)

30.    The Plan Committees restate and incorporate the allegations contained in each paragraph above as though fully set forth herein.

31.    Pursuant to Section 3(a) of the IMAs, NTI agreed not to enter into any transaction not authorized by the Investment Guidelines which caused the Investment Accounts not to achieve their respective investment objectives and, pursuant to Section 19 of the IMAs, to indemnify the Plans for breach of such obligation. NTI violated its obligations by, among other

things, (a) engaging in and maintaining excessive securities lending from the Collective Funds, (b) lending the NTGI Trust's securities to some of the same borrowers whose securities were purchased for the Collateral Pools, and (c) failing to implement adequate risk monitoring procedures and guidelines to prevent capital losses in the Collateral Pools.

32.     NTI's failure to limit the NTGI Trust's participation in securities lending despite the Plan Committees' requests that NTI do so, and its refusal to restrict such participation in the future, despite (a) the previously undisclosed risks that NTI could not distribute the Plans' assets in cash or in-kind upon the Plan Committees' withdrawal of the Plans' assets under the IMAs, and (b) the inherent risks of loss associated with the NTGI Trust's aggressive securities lending activities, including lending the NTGI Trust's securities to some of the same borrowers from whom securities were purchased for the Collateral Pools, constitute breaches of Section 3(a) of the IMAs and, pursuant to § 404(a)(1) of ERISA, a breach of NTI's fiduciary duties, including, without limitation, the duties of loyalty and prudence, in that NTI's actions were designed to increase the revenues earned on securities lending, and the amount of such revenues retained by NTI or its affiliates, in negligent disregard of the risk of capital losses to the Plans.  The Plans suffered such capital losses because, among other reasons, NTI engaged in such a high level of securities lending for certain Collective Funds (and indirectly the Index Funds) and negligently loaned the Collective Funds' securities to borrowers who also were debtors of the Collateral Pools.  NTI's actions have caused the Plans to suffer substantial losses on their interests in the NTGI Trust for which Defendants are obligated to indemnify the Plans under the IMAs and, under § 502(a)(2) of ERISA, to restore to the Plans the assets lost due to Defendants' breaches.

**Count III**

**(Imprudent Investment of Collateral Provided by Securities
Borrowers)**

33.     The Plan Committees restate and incorporate the allegations contained in each

paragraph above as though fully set forth herein.

34.     Pursuant to Section 3(a) of the IMAs, NTI agreed not to enter into any transaction

not authorized by the Investment Guidelines in a manner which caused the Investment Accounts

not to achieve their respective investment objectives and, pursuant to Section 19 of the IMAs, to

indemnify the Plans for breach of such obligation.  NTI violated its obligations by, among other

things, investing in securities for the Collateral Pools which were inappropriate investments in

light of the Investment Guidelines under the IMAs.

35.     NTI's failure to invest the collateral provided by securities borrowers in a prudent

manner, despite the inherent risks of loss associated with its collateral investments, constitutes a

breach of Section 3(a) of the IMAs and, pursuant to § 404(a)(1) of ERISA, a breach of NTI's

fiduciary duties, including, without limitation, the duties of loyalty and prudence, in that NTI's

actions were designed to increase the revenues earned on securities lending, and the amount of

such revenues retained by NTI or its affiliates, in negligent disregard of the risk of capital losses

to the Plans caused by NTI's negligent investment of collateral in inappropriate securities, which

breaches have caused the Plans to suffer substantial losses, and the risk of future losses, on their

interests in Defaulted Securities and Illiquid Securities for which Defendants are obligated to

indemnify the Plans under the IMAs and, under § 502(a)(2) of ERISA, to restore to the Plans the

assets lost due to Defendants' breaches.

## Count IV

## (Inadequate and Untimely Disclosure of Losses in the
## Securities Lending Program)

36.     The Plan Committees restate and incorporate the allegations contained in each

paragraph above as though fully set forth herein.

37.     NTI's failure to notify the Plan Committees of the existence and the severity of

losses in the Collateral Pools under NTI's securities lending program until at least five (5)

months after NTI became aware of the likelihood of severe losses, and NTI's repeated failures to

provide information requested by the Plan Committees about the status of the securities lending

program, including, without limitation, the value of the Collective Funds' (and indirectly the

Index Funds') securities being lent, constitutes, pursuant to § 404(a)(1) of ERISA, a breach of

NTI's fiduciary duties, including without limitation, the duties of loyalty and diligence, such that

the Plan Committees were deprived of timely and complete information which would have

enabled the Plan Committees to take action to reduce the effects of NTI's negligent operation of

the securities lending program before additional losses were incurred.  Defendants' breaches

have caused the Plans to suffer substantial losses on their interests in the NTGI Trust, and the

risk of future losses, for which Defendants are obligated under § 502(a)(2) of ERISA, to restore

to the Plans the assets lost due to Defendants' breaches.

## Count V

## (Failure to Disclose NTI's Conflict of Interest Due to Excessive
## Lending of Securities)

38.     The Plan Committees restate and incorporate the allegations contained in each

paragraph above as though fully set forth herein.

39.    Pursuant to Section 20 of the IMAs, NTI agreed to notify the Plan Committees of any conflict of interest and the measures taken to eliminate such conflict; and, pursuant to Section 19 of the agreements, to indemnify the Plans for breach of such obligations.

40.    NTI failed to notify the Plan Committees of the extent of NTI's self-interest in expanding and maintaining the securities lending program to generate increased revenue for NTI, and to shore up the capital of other NTI-managed funds in order to attract new investors and retain current investors, because NTI only reported the high volume of securities lending once each year, or of the increased credit risk of the securities in which the collateral received from the borrowers of securities was invested.  This failure to notify constitutes a breach of Section 20 of the IMAs and, pursuant to § 404(a)(1) of ERISA, a breach of NTI's fiduciary duties, including without limitation, the duties of loyalty and prudence, in that NTI's actions increased the revenue which NTI or its affiliates received from the lending of securities based on the net income earned on the securities in which the collateral was invested, at no risk to NTI, but with increased risk of losses to the Plans' interests in the NTGI Trust.  Defendants' breaches have caused the Plans to suffer substantial losses, and the risk of future losses, on their interests in the NTGI Trust for which Defendants are obligated to indemnify the Plans under the IMAs and, under § 502(a)(2) of ERISA, to restore to the Plans the assets lost due to Defendants' breaches.  The NT Defendants now face an inherent conflict of interest:  *either* permit the Plans to fully withdraw as is their right and absorb potential losses in NTI's other funds caused by effecting the Plans' withdrawal *or* attempt to transfer losses from those other funds to the Plans for the benefit of other investors in those other funds.

16

## Count VI

### (Engaging In ERISA-Prohibited Transactions)

41.     The Plan Committees restate and incorporate the allegations contained in each paragraph above as though fully set forth herein.

42.     The NT Defendants' failure to terminate the Plans' interests in securities loans and return cash or Index Fund securities to the Plans upon demand violates ERISA's prohibition against certain transactions.  *See* 29 U.S.C. § 1106.

43.     Section 406(b)(1) of ERISA prohibits a fiduciary, such as NTI, from "deal[ing] with the assets of the plan in his own interest or for his own account . . . ."  29 U.S.C. § 1106(b)(1).  The NT Defendants have done just that by lending the Collective Funds' securities for the NT Defendants' benefit by taking 40% of any profits earned on those loans.

44.     Section 408(a) of ERISA, 29 U.S.C. § 1108(a), permits the Secretary of Labor to grant exemptions to this prohibition, which the Secretary of Labor has established for securities lending agreements.  *See* Prohibited Transaction Exemption ("PTE") 2006-16, Section I(c), 71 Fed. Reg. 63786.  But because the NT Defendants failed to comply with the exemption's requirements, the NT Defendants are liable for engaging in prohibited transactions.

45.     Section I(c) of PTE 2006-16 provides, in part, that the "restrictions of section 406(b)(1) of ERISA . . . shall not apply to the payment to a fiduciary (the Lending Fiduciary) of compensation for services rendered in connection with loans of plan assets that are securities, ***provided that the conditions set forth in section IV below are met***."  71 Fed. Reg. 63796. (Emphasis added.)  In turn, Section IV(d)(1) requires "prior written authorization of a plan fiduciary . . . independent of the Lending Fiduciary and any affiliate thereof . . . ."  Further, Section IV(d)(2) requires, among other things, that the compensation to the Lending Fiduciary

may be terminated "by the authorizing fiduciary" (here, the Plan Committees) within the lesser

of the time negotiated by the parties *or* five days.  71 Fed. 63797.

46.     Under PTE 2006-16, Section IV(e), the Authorizing Fiduciary cannot provide

authorization of the compensation arrangement unless the Lending Fiduciary has furnished the

Authorizing Fiduciary with any reasonably available information which the Lending Fiduciary

reasonably believes to be necessary to determine whether such authorization should be made or

renewed, and any other reasonably available information regarding the matter that the

Authorizing Fiduciary may reasonably request.  71 Fed. Reg. at 63797.

47.     Under PTE 2006-16, Section IV(f)(1), subsection (d) does not apply to collective

trust funds, but only if the Lending Fiduciary has provided any reasonably available information

which the Lending Fiduciary reasonably believes to be necessary to determine whether such

authorization should be made or renewed, and any other reasonably available information

regarding the matter that the Authorizing Fiduciary may reasonably request, to the Authorizing

Fiduciary of each plan whose assets are invested in the collective fund, not less than 30 days

prior to the implementation of the arrangement, and upon the reasonable request of the

Authorizing Fiduciary.  71 Fed. Reg. at 63797.

48.     Under PTE 2006-16, Section IV(f)(3), if the Lending Fiduciary fails to provide

the information requested by the Authorizing Fiduciary in the manner described in subsection

(f)(1), the plan's investment in the collective fund will be governed by subsection (d)(1).  71 Fed.

Reg. at 63798.

49.     NTI, as trustee of the NTGI Trust, entered into a certain Securities Lending

Authorization Agreement, dated August 1, 2006 ("SLAA"), with NTC.

50.     NTI, on behalf of the Collective Funds, and indirectly on behalf of the Index Funds, agreed to appoint NTC as NTI's agent to loan the Collective Funds' securities pursuant to the Securities Lending Authorization Agreement.

51.     The Securities Lending Authorization Agreement provided that NTI, as trustee of the NTGI Trust, acted on behalf of the Collective Funds to appoint NTC as an agent to lend securities from one or more of the Collective Funds to third-party borrowers.

52.     The NT Defendants failed to provide the SLAA to the Plan Committees before authorizing NTC to act as the securities lending agent, and the NT Defendants continued to withhold the SLAA even after multiple requests from the Plan Committees.

53.     The Plan Committees requested a copy of the SLAA from NTI on numerous occasions from at least as early as April 2008 to October 2008, but were told by NTI that NTI's Legal Department would not authorize delivery to the Plan Committees of a copy of the SLAA. The Plan Committees finally received a copy of the SLAA on or about October 8, 2008, after the Plans had incurred heavy losses.

54.     By failing to get prior written authorization for the securities lending compensation arrangement from the Plan Committees, and failing to provide a copy of the SLAA to the Plan Committees at least 30 days prior to the implementation of the arrangement or after repeated requests, the NT Defendants have failed to comply with subsections IV (d) and (f) of PTE 2006-16.

55.     Because the NT Defendants failed to comply with PTE 2006-16, their operation of the securities lending program for the Plans was unauthorized and a per se violation of § 406(b)(1) of ERISA.  29 U.S.C. § 1106.

56.     The NT Defendants have refused to allow the Plan Committees to withdraw from their indirect participation in securities lending with the Index Funds' assets within 5 days, in violation of PTE 2006-16, Section IV(d)(2)(ii).

57.     Thus, the NT Defendants continue to deal with the Plans' assets for their own profit without the necessary authorization from the Plan Committees in violation of Section IV of PTE 2006-16.  Moreover, upon information and belief, the NT Defendants are using the Plans' assets not only for their own profit, but to shore up the liquidity of the Collateral Pools.  The NT Defendants are using that liquidity to process so-called "ordinary course" transactions of other investors in the Collateral Pools, thereby using the Plans' assets to fulfill their responsibilities to their other investors and potentially limit their liability to those other investors.  Nothing in PTE 2006-16 permits the NT Defendants to commandeer the Plans' assets for their own use in this way.  To the contrary, such an act is a textbook example of "deal[ing] with assets of the plan in his own interest" in direct violation of § 406(b)(1) of ERISA.

58.     The NT Defendants' violations of Section 406 of ERISA have caused the Plans to suffer substantial losses, and the risk of future losses, on account of their interests in the Collateral Pools' investments.  Their continuing violation must be enjoined pursuant to § 502(a) of ERISA, 29 U.S.C. § 1132(a), and any damages incurred must be restored pursuant to § 409 of ERISA, 29 U.S.C. § 1109.

## **REQUEST FOR RELIEF**

Wherefore, the Plaintiffs demand judgment against Defendants NORTHERN TRUST INVESTMENTS, N.A. and THE NORTHERN TRUST COMPANY, jointly and severally, for the following relief:

(A)    Find and declare that Defendants have breached the Investment Manager Agreements, the NTGI Trust and their fiduciary duties under ERISA as described above;

(B)    Find and declare that Defendants have engaged in a prohibited transaction in violation of § 406 of ERISA by their operation of a securities lending program with the securities held in the Index Funds;

(C)    Pursuant to § 502(a)(3) of ERISA, injunctive relief as set forth above;

(D)    Pursuant to §§ 409(a) and 502(a)(2) of ERISA, disgorgement/restitution and/or damages as set forth above, and all other remedial relief as the Court may deem appropriate;

(E)    Pursuant to § 502(g) of ERISA, reasonable attorneys' fees and costs;

(F)    Payment to the Plans of such damages as the Plans sustained as a result of Defendants' breaches of the Investment Manager Agreements, including losses to the Plans resulting from imprudent investment of the Plans' assets; to restore to the Plans all profits the Defendants made through use of the Plans' assets; and to restore to the Plans all profits which the Plans' participants would have made if Defendants had performed their obligations under the Investment Manager Agreements;

(G)    Pre-judgment and post-judgment interest at the maximum allowable rates; and

(H)    All such other and further relief, general or special, legal or equitable, to which the Plaintiffs may be entitled.

## **Demand for Jury Trial**

Plaintiffs hereby request a trial by jury.

_/s/ Keith P. Schoeneberger_
Keith P. Schoeneberger

Michael H. King
Keith P. Schoeneberger
Therese K. Nohos
Bryan M. Westhoff
DEWEY & LEBOEUF LLP
180 North Stetson, Suite 3700
Two Prudential Plaza
Chicago, IL  60601-6710
Telephone:  312-794-8000
Facsimile:  312-794-8100

**PLAINTIFFS' COUNSEL**