**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| BP CORPORATION NORTH AMERICA INC. SAVINGS PLAN INVESTMENT OVERSIGHT COMMITTEE serving in its capacity as a named fiduciary of the BP Employee Savings Plan, the BP Capital Accumulation Plan, the BP DirectSave Plan, the BP Employee Savings Plan of Puerto Rico, and the BP Partnership Savings Plan under the BP Master Trust for Employee Savings Plans and the BP Solar Employee Savings Plan under the Trust for the BP Solar Employee Savings Plan, and BP CORPORATION NORTH AMERICA INC. INVESTMENT COMMITTEE serving in its capacity as a named fiduciary of the BP Retirement Accumulation Plan and the Enstar Corporation Retirement Plan under the BP Master Trust for Employee Pension Plans, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge William J. Hibbler  Magistrate Judge Morton Denlow |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 08 C 6029 |
| v. | ) ) | |
| NORTHERN TRUST INVESTMENTS, N.A. and THE NORTHERN TRUST COMPANY, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION**
**TO DISMISS DEFENDANTS' COUNTERCLAIMS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

BACKGROUND ........................................................................................................2

ARGUMENT .............................................................................................................3

I.      There is No Cause of Action for Indemnification or Contribution under
ERISA ............................................................................................................3

      A.      There is No Implied Right of Action for Claims  Excluded from
ERISA's Statutory Scheme .......................................................3

      B.      The Seventh Circuit Is Unlikely to Recognize a Private Right of
Action for Indemnification or Contribution under ERISA ....................................5

      C.      Other Courts Have Declined to Recognize an Implied  Cause of
Action for Indemnification and Contribution ...........................................7

      D.      The Recent Decision in Union Bank Does Not  Follow Supreme
Court or Seventh Circuit Precedent ........................................8

II.     Defendants Fail to Plead Facts Stating a Claim on Which Relief Can Be
Granted............................................................................................................9

      A.      Defendants Fail Allege Facts Stating a Claim Based on Section 405 ..................10

            1.      Defendants Cannot State a Claim Based on Sections 405(a)(2)
or (3)......................................................................................11

            2.      Defendants Have Failed to Allege Sufficient Facts  to Support
a Claim under Section 405(a)(1)...............................................12

                  a.      Defendants Do Not Allege that Plaintiffs Participated
in or Undertook to Conceal Defendants' Breaches of
Fiduciary Duty ............................................................13

                  b.      Defendants Do Not Allege Facts that Plaintiffs
Knowingly Participated in or Concealed  Defendants'
Breaches of Fiduciary Duty .........................................14

                  c.      Defendants Do Not Allege that Plaintiffs Knew that
Defendants' Acts Constituted a Breach of Fiduciary
Duty............................................................................15

      B.      Defendants Have Not Pleaded a Claim under Section 409....................16

CONCLUSION..........................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................................................12, 13, 14, 15

*Bartz v. Carter*, No. 88 C 5793, 1991 U.S. Dist. LEXIS 11020 (N.D. Ill. 1991)...........................8

*Buckly Dement, Inc. v. Travelers Plan Adm'rs of Ill., Inc.*, 39 F.3d 784 (7th Cir. 1994) ........................................................................................5, 6, 7, 8

*Chemung Canal Trust Co. v. Sovran Bank/Md.*, 939 F.2d 12 (2d. Cir. 1991)................................7

*Dardaganis v. Grace Capital, Inc.*, 889 F.2d 1237 (2d Cir. 1989)................................12

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980)...........................................................7

*Free v. Briody*, 732 F.2d 1331 (7th Cir. 1984) ...........................................................5

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) .......................................4, 7

*Hollingshead v. Burford Equip. Co.,* 747 F. Supp. 1421 (M.D. Ala. 1990)...................................8

*Int'l Bhd. of Painters & Allied Trades Union and Indus. Pension Plan v. Duval,* No. 92-1099, 1994 WL 903314 (D.D.C. 1994).........................................................8

*Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184 (7th Cir. 1994) ...................................................6

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 129 S. Ct. 865 (2009)................................9

*Kim v. Fujikawa*, 871 F.2d 1427 (9th Cir. 1989) ....................................................................6, 7

*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020 (2008) ..............................................9

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)......................................................3, 4, 5

*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) ...........................................................7

*Milwaukee v. Illinois*, 451 U.S. 304 (1981) ...........................................................6

*Mut. Life Ins. Co. of New York v. Yampol*, 706 F. Supp. 596 (N.D. Ill. 1989) ....................5, 7, 12

*NARDA, Inc. v. Rhode Island Hosp. Trust Nat. Bank*, 744 F. Supp. 685 (D. Md. 1990) ........................................................................................6

*Northwest Airlines, Inc. v. Trans. Workers Union of Am., AFL-CIO*, 451 U.S. 77 (1981)........................................................................................4

*Pappas v. Buck Consultants, Inc.*, 923 F.2d 531 (7th Cir. 1991) ..........................................5, 6, 9

*Plumbers Local 93 Health and Welfare and Pension Fund v. DePietro Plumbing Co.*, No. 94 C 7378, 1999 U.S. Dist. LEXIS 6913 (N.D. Ill. 1999) ....................................8

*Radutzky v. Wallert*, No. 87 C 4340, 1988 U.S. Dist. LEXIS 15152 (E.D.N.Y. Dec. 30, 1988) ..............................................................................................................17

*Schloegel v. Boswell,* 766 F. Supp. 563 (S.D. Miss. 1991).............................................8

*Summers v. State St. Bank & Trust Co.*, 453 F.3d 404 (7th Cir. 2006) ..........................5

*Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981) ................4, 6, 7

*Travelers Cas. and Sur. Co. of Am. v. Iada Servs., Inc.*, 497 F.3d 862 (8th Cir. 2007) ..............6, 7

*Trs. of Auto. Mechs. Local No. 701 Pension & Welfare Funds v. Union Bank of Cal., N.A.*, No. 08 C 7217, 2009 WL 1877326 (N.D. Ill. July 1, 2009) ................8, 9

*Trustmark Life Ins. Co. v. Univ. of Chicago Hosp.*, 207 F.3d 876 (7th Cir. 2000) .......................5

*UIU Severance Pay Trust Fund v. Local Union No. 18-United Steel Workers of Am.*, 998 F.2d 509 (7th Cir. 1993) ............................................................................5

*Williams v. Provident Inv. Counsel, Inc.*, 279 F. Supp. 2d 894 (N.D. Ohio 2003)........................8

## STATUTES

29 U.S.C. § 1001....................................................................................................2, 6

29 U.S.C. § 1105 (ERISA § 405)............................................................................. *passim*

29 U.S.C. § 1109 (ERISA § 409)............................................................................. *passim*

29 U.S.C. § 1132...................................................................................................3, 4, 5

## MISCELLANEOUS

29 C.F.R. § 2509.75-8 at FR 17 ..................................................................................14

William M. Landes & Richard A. Posner, *The Economic Structure of Tort Law* 201-04 (1987)..............................................................................................................6

Plaintiffs, the Plan Committees,[1] respectfully submit this memorandum in support of Plaintiffs' Motion to Dismiss Defendants' Counterclaims.

## INTRODUCTION

In response to Plaintiffs' allegations that Defendants breached their fiduciary duties in managing the Index Funds on behalf of thousands of BP Plan participants, the NT Defendants have brought counterclaims against Plaintiffs, the Plan Committees. While Defendants initially held themselves out as a qualified investment manager, they now allege that Plaintiffs should have provided constant supervision over all of their discretionary decisions. In essence, Defendants allege that Plaintiffs knew or should have known that Defendants were imprudent fiduciaries and, therefore, Plaintiffs never should have appointed NTI as an investment manager or allowed Defendants to exercise unsupervised discretion over the Index Funds. Based on the "you should have stopped me" theory, Defendants seek indemnification or contribution from Plaintiffs in order to eliminate or lessen Defendants' liability for their own actions. Defendants make this argument – that Plaintiffs undertook all the risks, responsibilities and duties associated with the Index Funds and securities lending – without explaining why Plaintiffs paid them millions of dollars in fees, in addition to 40% of the Plans' income associated with securities lending.

Regardless of the substance of Defendants' argument, or lack thereof, the counterclaims should be dismissed because there is no cause of action for indemnity or contribution among culpable fiduciaries under ERISA. The Court should unequivocally decline the invitation to create such implied causes of action, which Congress excluded from ERISA's comprehensive enforcement scheme, for the sole benefit of an imprudent fiduciary. Further, the Court should

---

[1] Capitalized terms not defined in this memorandum shall have the same meaning as in the Amended Complaint (D.I. 64).

dismiss Defendants' counterclaims as they fail to allege all of the necessary elements or sufficient facts to support a claim based on ERISA Section 405. Finally, Defendants lack standing to bring a claim based on ERISA Section 409.

## **BACKGROUND**

Plaintiffs' Amended Complaint alleges that the NT Defendants have breached fiduciary duties owed to the Plan Committees and Plan participants under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA"), and the IMAs. (D.I. 64.) Under the terms of the IMAs, NTI agreed to serve as an Investment Manager for the Plan Committees. (D.I. 64, ¶ 14; D.I. 104 ¶ 14.) The IMAs authorized NTI to invest the Plans' assets into certain Index Funds within the NTGI Trust. (D.I. 64, ¶ 13; D.I. 104 ¶ 13.) These Index Funds were supposed to match the return of corresponding benchmark indexes by owning the same securities in approximately the same proportion as the benchmark indexes. (D.I. 48, Plaintiffs' Proposed Findings of Fact ("PPFF") ¶ 13.) The NT Defendants also were authorized to conduct securities lending within the Index Funds. (D.I. 64, ¶ 15; D.I. 104 ¶ 15.) This securities lending option allowed Defendants to earn some supplemental income for the Index Funds, in order to partially offset the funds' costs and more closely match the return of the benchmark indexes. (*Id*.)

The Plan Committees filed their initial Complaint after discovering that Defendants had excessively lent the Plans' securities from the Index Funds and invested the cash collateral from such loans in illiquid securities, to the point that Defendants could not (or would not) effectuate a timely withdrawal of the BP Plans' assets from the funds. The Plan Committees alleged, among other things, that Defendants breached their fiduciary duties to the Plans and Plan participants by (i) failing to conduct the securities lending component of the Index Funds with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims (the "Prudent Man Standard"); and (ii) failing to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan (the "Exclusive Benefits Rule"). In response, the NT Defendants have filed Counterclaims against the Plan Committees for Indemnification and Contribution, alleging that if the NT Defendants are found liable for breaches of their fiduciary duties, then the Plan Committees are substantially more at fault than NTI or NTC for the losses to the BP Plans. (Countercl. ¶¶ 29-45, 47-48, 53-54.)

## ARGUMENT

## I.    There is No Cause of Action for Indemnification or Contribution under ERISA

The NT Defendants' counterclaims for Indemnification and Contribution should be dismissed because ERISA provides no private cause of action for indemnification or contribution. Indeed, the NT Defendants cite to *no* statutory basis for their Indemnification or Contribution claims. (Countercl. ¶¶ 46-58.) This is because, in passing the comprehensive ERISA legislation, Congress did not intend for Defendants to have a right of contribution or indemnification.

### A.    There is No Implied Right of Action for Claims Excluded from ERISA's Statutory Scheme

The Supreme Court has held that the judiciary should not imply causes of actions that Congress excluded from ERISA's statutory scheme. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985). In *Russell*, the Court considered whether a plan participant or beneficiary had an implied cause of action for extra-contractual compensatory or punitive damages. *Id.* at 136. The Court held that six carefully integrated civil enforcement provisions found in § 502(a) of the ERISA statute provided strong evidence that Congress did *not* intend to authorize other remedies

that it simply forgot to incorporate expressly. *Id.* at 146 ("The assumption of inadvertent

omission is rendered especially suspect upon close consideration of ERISA's interlocking,

interrelated and interdependent remedial scheme, which is in turn part of a comprehensive and

reticulated statute." (internal quotation omitted)). The Court held that it was reluctant to tamper

with an enforcement scheme crafted with such evident care as the one in ERISA. *Id.* at 147.

Since *Russell*, the Court has repeatedly refused to recognize other implied causes of action not

included in the ERISA statute. *See, e.g.*, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534

U.S. 204, 209-10 (2002) (holding that ERISA Section 502(a)(3) did not authorize trustees to

enforce a reimbursement provision of an ERISA plan as an equitable remedy).

While *Russell* did not involve the right of contribution or indemnification, the Court's

analysis suggests that it would similarly refuse to recognize these proposed causes of action.

*Russell* cited *Northwest Airlines, Inc. v. Trans. Workers Union of Am., AFL-CIO*, 451 U.S. 77,

97 (1981) and *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981). *Russell*,

473 U.S. at 147 and n. 15. In both cases the Court refused to find implied causes of action for

contribution under similar comprehensive statutory schemes. *Northwest Airlines*, 451 U.S. at 97

(holding that there was no cause of action for contribution under the Equal Pay Act or Title VII

of the Civil Rights Act because "[t]he presumption that a remedy was deliberately omitted from

a statute is strongest when Congress has enacted a comprehensive legislative scheme including

an integrated system of procedures for enforcement"); *Texas Industries*, 451 U.S. at 643-46

(holding that the judiciary could not imply a cause of action for contribution under the Sherman

Act or the Clayton Act, even though "[t]he legislative history makes it perfectly clear that

[Congress] expected the courts to give shape to the statute's broad mandate by drawing on

common-law tradition"). Thus, *Russell* suggests that a similar right of contribution would also not be implied into ERISA.

### B. The Seventh Circuit Is Unlikely to Recognize a Private Right of Action for Indemnification or Contribution under ERISA

Whether there is an implied right of action for contribution under ERISA "remains an open [question] in this circuit." *Summers v. State St. Bank & Trust Co.*, 453 F.3d 404, 413 (7th Cir. 2006). Decisional authority, however, suggests that the Seventh Circuit would refuse to recognize an implied cause of action for indemnification or contribution.[2]

While the federal courts are charged with the responsibility of fashioning a federal common law "to deal with issues involving rights and obligations under private welfare and pension plans," the Seventh Circuit has repeatedly held that federal common law should not create new remedies that were excluded by Congress. *Buckly Dement, Inc. v. Travelers Plan Adm'rs of Ill., Inc.*, 39 F.3d 784, 789 (7th Cir. 1994) (holding that the court was without authority to create a federal common law right of action against a nonfiduciary pursuant to ERISA) (internal quotations omitted); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531 (7th Cir. 1991) (same). The Seventh Circuit has "'been extremely reluctant to find that ERISA creates certain causes of action by implication in addition to those enumerated in the statute itself.'" *Buckly*, 39 F.3d at 789 (quoting *UIU Severance Pay Trust Fund v. Local Union No. 18-United Steel Workers of Am.*, 998 F.2d 509, 512 (7th Cir. 1993)); *see also Trustmark Life Ins. Co. v. Univ. of Chicago Hosp.*, 207 F.3d 876, 881-82 (7th Cir. 2000) (refusing to create a cause of action under federal common law which supersedes the civil enforcement provisions already

---

[2] In light of the Court's holding in *Russell* that only a plan can seek relief under ERISA Section 409, *Russell*, 473 U.S. at 144, the Seventh Circuit now also should not recognize a co-fiduciary's right to seek indemnification under ERISA Section 409. Accordingly, the court's holding in *Free v. Briody*, 732 F.2d 1331, 1337 (7th Cir. 1984) ("In our opinion . . . [a]n award of indemnification within the limited circumstances appears to us to be properly within the court's equitable powers") no longer can be relied upon. *See Mut. Life Ins. Co. of New York v. Yampol*, 706 F. Supp. 596, 600 (N.D. Ill. 1989).

enumerated in 29 U.S.C. § 1132(a)). Rather, the court has held that "[t]he establishment of…a self-consciously comprehensive program by Congress…strongly suggests that there is no room for the courts to attempt to improve on that program with federal common law.'" *Pappas*, 923 F.2d at 541 (quoting *Milwaukee v. Illinois*, 451 U.S. 304, 319 (1981)).

Similarly, the Seventh Circuit has held that the judiciary should decline to impose its own balancing of the equities to create a private right of action excluded by Congress. *Buckly*, 39 F.3d at 789 ("mindful of our role as an intermediate appellate court, we have concluded that 'because ERISA is a highly technical statute our part is to apply it as precisely as we can, rather than to make adjustments according to a sense of equities in a particular case.'" (quoting *Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184, 1190 (7th Cir. 1994))). Indeed, there are a number of reasons against allowing a right of contribution among joint wrongdoers that Congress may have considered when it omitted a cause of action for contribution within ERISA. *See Travelers Cas. and Sur. Co. of Am. v. Iada Servs., Inc.*, 497 F.3d 862, 866 (8th Cir. 2007) ("There are policy arguments for and against a right of contribution among joint wrongdoers."). For example, the contribution rule is inefficient because it increases administrative costs to plan beneficiaries without increasing deterrence. William M. Landes & Richard A. Posner, *The Economic Structure of Tort Law* 201-04 (1987) (relevant pages attached as Exhibit A). Because ERISA was intended to protect participants, and not fiduciaries, 29 U.S.C. § 1001(b), Congress apparently sought to avoid the complications of contribution claims solely to "ameliorate the liability of wrongdoers" through contribution rights. *Texas Industries*, 451 U.S. at 639; *see also Kim v. Fujikawa*, 871 F.2d 1427, 1433 (9th Cir. 1989) (stating that there "is no indication in the legislative history that Congress was concerned with softening the blow on joint wrongdoers"); *NARDA, Inc. v. Rhode Island Hosp. Trust Nat. Bank*, 744 F. Supp. 685, 696 (D. Md. 1990)

(noting that it is not surprising that ERISA does not provide the right of indemnification and contribution among culpable fiduciaries because such remedies do not protect the participants, beneficiaries or plans).

### C.  Other Courts Have Declined to Recognize an Implied Cause of Action for Indemnification and Contribution

The Eight Circuit is the latest court of appeals to consider whether there is an implied cause of action for contribution under ERISA. *See Travelers*, 497 F.3d 862. In *Travelers*, the court relied on *Northwest Airlines, Texas Industries* and *Russell*, among others, in declining to recognize a right of contribution between joint wrongdoers under ERISA. *Id.* at 865. This holding was similar to the finding of the Ninth Circuit, which also refused to recognize an ERISA right of contribution. *Kim*, 871 F.2d 1427. The *Travelers* Court distinguished the Second Circuit's holding in *Chemung Canal Trust Co. v. Sovran Bank/Md.*, 939 F.2d 12, 16-17 (2d. Cir. 1991), by noting that after *Chemung Canal* was decided the Supreme Court has "reiterated more than once its admonition that notwithstanding the authority to fashion certain rules of federal common law under ERISA, the statute's 'carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Travelers*, 497 F.3d at 866 (quoting *Knudson*, 534 U.S. at 209 (internal quotes omitted) and citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993)). In line with the Seventh Circuit, *Travelers* stated that the judiciary should not impose its opinion of whether there should be right of contribution. Compare *Texas Industries,* 451 U.S. at 647 (holding that whether to provide a right of contribution is "'a matter of high policy for resolution within the legislative process after the kind of investigation, examination, and study that legislative bodies can provide and courts cannot.'") (quoting *Diamond v. Chakrabarty,* 447 U.S. 303, 317 (1980)) with *Buckly*, 39 F.3d at 789 ("mindful of

our role as an intermediate appellate court, we have concluded that 'because ERISA is a highly technical statute our part is to apply it as precisely as we can, rather than to make adjustments according to a sense of equities in a particular case.'").

A number of district courts also have held that there is no right of contribution under ERISA between co-fiduciaries. *See*, *e.g.*, *Plumbers Local 93 Health and Welfare and Pension Fund v. DePietro Plumbing Co.*, No. 94 C 7378, 1999 U.S. Dist. LEXIS 6913, at *14-15 (N.D. Ill. 1999) (cases published in electronic databases are attached as Exhibit B); *Bartz v. Carter*, No. 88 C 5793, 1991 U.S. Dist. LEXIS 11020, at *4 (N.D. Ill. 1991); *Yampol*, 706 F. Supp. at 598-600; *Williams v. Provident Inv. Counsel, Inc.*, 279 F. Supp. 2d 894, 900-03 (N.D. Ohio 2003); *Int'l Bhd. of Painters & Allied Trades Union and Indus. Pension Plan v. Duval,* No. 92-1099, 1994 WL 903314 (D.D.C. 1994); *Schloegel v. Boswell,* 766 F. Supp. 563, 569 (S.D. Miss. 1991); *Hollingshead v. Burford Equip. Co.,* 747 F. Supp. 1421, 1445 (M.D. Ala. 1990).

### D. The Recent Decision in *Union Bank* Does Not Follow Supreme Court or Seventh Circuit Precedent

Despite recognizing that the most recent appellate jurisprudence holds that there is no implied right of contribution under ERISA, one Northern District court recently allowed the claim. *See Trs. of Auto. Mechs. Local No. 701 Pension & Welfare Funds v. Union Bank of Cal., N.A.*, No. 08 C 7217, 2009 WL 1877326, at *2 (N.D. Ill. July 1, 2009) (acknowledging that *Travelers* relied on more recent jurisprudence). *Union Bank* created an implied cause of action for contribution under the common law of trusts based on its finding that the trustees had a conflict of interest. *Id.* This decision, however, is contrary to the Seventh Circuit's holding that the judiciary should not apply its own balancing of the equities to create an implied cause of action. *Buckly*, 39 F.3d at 789 (holding that the court should not make adjustments to the ERISA enforcement scheme according to a sense of equities in a particular case).

*Union Bank* relied on two Supreme Court cases to support its finding that the common law of trusts creates an implied right of action for contribution. *Union Bank*, 2009 WL 1877326, at *2 (citing *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 129 S. Ct. 865 (2009) and *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020 (2008)). Neither of these cases, however, applied federal common law to create an implied cause of action that Congress excluded from the statute. *Kennedy*, 129 S. Ct. at 871 (relying on the law of trusts to interpret conflicting federal code provisions related to the effect of a waiver of benefits in the administration of a decedent's estate); *LaRue*, 128 S. Ct. at 1024 n.4 (stating that the common law of trusts informs the court's interpretation of ERISA's fiduciary duties). Thus, unlike *Kennedy* and *LaRue*, *Union Bank* did not concern the "rights and obligations" under ERISA that are the within the purview of the courts' power to create federal common law, but rather "concerned the distinct question of whether ERISA creates a remedy…for violations of those 'rights and obligations.'" *Pappas*, 923 F. 2d at 541. Indeed, *LaRue* even held that its decision was compelled by the rationale in *Russell* based on the specific causes of action provided in ERISA. *LaRue*, 128 S. Ct. at 1022, and 1026 (holding that ERISA Section 502(a)(2) authorized a cause of action for a participant in a defined contribution plan against a fiduciary whose alleged misconduct impaired the value of plan assets in the participant's individual account). Accordingly, the Court should not find an implied cause of action for indemnification or contribution for the NT Defendants based on ERISA.

## II.     Defendants Fail to Plead Facts Stating a Claim on Which Relief Can Be Granted

Notwithstanding that Defendants' counterclaims are unavailable under ERISA, Defendants' counterclaims separately should be dismissed for failure to plead facts stating a claim on which relief can be granted. Although Defendants fail to allege any specific statutory basis for their counterclaims, they appear to be based on ERISA Sections 405 and 409.

Defendants, however, have failed to allege the necessary elements or sufficient facts to support a claim based on Section 405, and lack standing to bring a claim based on Section 409.

### A. Defendants Fail Allege Facts Stating a Claim Based on Section 405

Although the NT Defendants fail to identify any statutory basis for their counterclaims, Defendants' claims generally allege that Plaintiffs are responsible for Defendants' breaches of their fiduciary duties. The only statutory basis under ERISA for a co-fiduciary's liability for another fiduciary's misconduct is Section 405. 29 U.S.C. § 1105 ("Liability for breach of co-fiduciary"). Section 405 provides, in part, that:

> [A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 1104 (a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

*Id.* at § 1105(a). Section 405 limits a fiduciary's liability based on a co-fiduciary's misconduct as follows:

> If an investment manager or managers have been appointed under section 1102 (c)(3) of this title, then, notwithstanding subsections (a)(2) and (3) and subsection (b) of this section, no trustee shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager.

*Id.* at § 1105(d)(1). Because Defendants allege that NTI was appointed to serve as an ERISA investment manager of Plan assets, Plaintiffs' potential liability under Section 405 is limited to the conduct described in Section 405(a)(1). Defendants have failed to allege sufficient facts to

support a claim against Plaintiffs based on Section 405 – perhaps explaining why Defendants chose not to cite the statute.

### 1. Defendants Cannot State a Claim Based on Sections 405(a)(2) or (3)

Defendants admit that "[p]ursuant to the investment manager agreements described above (jointly the 'IMAs'), NTI was appointed as investment manager for certain assets of the BP Plans." (Countercl. ¶ 10.) As stated above, ERISA Section 405(d) provides that "[i]f an investment manager has been appointed…then, notwithstanding subsections (a)(2) and (3)…no trustee shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager." 29 U.S.C. § 1105(d). Here, a number of Defendants' allegations appear to be based on Section 405(a)(2) and (3). Specifically, Defendants allege that Plaintiffs "(iii) neglected to take proper steps to redress" Defendants' breaches of fiduciary duty. (Countercl. ¶¶ 32, 35, 38, 41, and 43.) This suggests a claim based on Section 405(a)(3). 29 U.S.C. § 1105(a)(3) (providing for potential liability "if [a fiduciary] has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances *to remedy* the breach") (emphasis supplied). Defendants also allege that Plaintiffs "(iv) enabled NTC and NTI to commit" Defendants' breaches of fiduciary duty. (Countercl. ¶¶ 32, 35, 38, 41, and 43.) This suggests a claim based on Section 405(a)(2). 29 U.S.C. § 1105(a)(2) (providing for a fiduciary's liability "if, by his failure to comply with…his specific responsibilities which give rise to his status as a fiduciary, he has *enabled* such other fiduciary to commit a breach") (emphasis supplied). Because Defendants' claims against Plaintiffs based on Section 405(a)(2) and (3) are foreclosed by NTI's investment manager status (including NTI's appointment of NTC), such claims should be dismissed.

### 2.     Defendants Have Failed to Allege Sufficient Facts
### to Support a Claim under Section 405(a)(1)

As Trustees who appointed NTI as an investment manager, the Plaintiffs' only potential

liability to Plan participants for the NT Defendants' breaches of their fiduciary duty appears to

be based on Section 405(a)(1).  *See* 29 U.S.C. § 1105(d).  Under Section 405(a)(1), a co-

fiduciary may be liable "if he participates knowingly in, or knowingly undertakes to conceal, an

act or omission of such other fiduciary, knowing such act or omission is a breach."  *Id.* at

§ 1105(a)(1).  Defendants appear to claim that Plaintiffs are liable based on Section 405(a)(1)

when they allege that Plaintiffs "participated knowingly in, and knowingly undertook to conceal,

the alleged acts or omissions of NTC and NTI, knowing those alleged acts and omissions to

constitute breaches of fiduciary duties."  (Countercl. ¶¶ 32, 35, 38, 41, and 43.)[3]  Defendants,

however, fail to allege sufficient facts to support a plausible claim of liability under Section

405(a)(1), even under the liberal notice pleading standard of Federal Rule of Civil Procedure

8(a).

Under the notice pleading standard of Rule 8, a plaintiff (or counter-plaintiff) must

provide a factual basis for his claims.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  As the Court

explained:

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to "state a claim to relief that is
> plausible on its face."  A claim has facial plausibility when the

---

[3] Defendants also appear to claim that Plaintiffs are liable based on Section 405(a)(1) when they allege that Plaintiffs "(i) engaged and participated in" or "(ii) approved, ratified, acquiesced in, or concealed" the Defendants' breaches of fiduciary duty.  (Countercl. ¶¶ 32, 35, 38, 41, and 43.)  These allegations, however, fail to state a proper claim based on Section 405(a)(1) because they never allege that Plaintiffs' participated *knowingly* in or *knowingly* undertook to conceal the NT Defendants' acts or omissions, or that Plaintiffs *knew* at the time that the Defendants' acts or omissions were a breach of their fiduciary duties.  By failing to allege that Plaintiffs had the requisite mental state to support liability under Section 405(a)(1), such counterclaims should be dismissed. *Yampol*, 706 F. Supp. at 600 (dismissing counterclaim where counter-plaintiff failed to allege that counter-defendants owed him a fiduciary duty, which is a necessary element for a breach of fiduciary duty claim).  Moreover, Plaintiffs' alleged approval, ratification or acquiescence in Defendants' actions cannot support an independent claim against Plaintiffs. *See Dardaganis v. Grace Capital, Inc.*, 889 F.2d 1237, 1241 (2d Cir. 1989) (holding that trustee's knowledge of defendant's actions did not relieve defendants of liability for breach of fiduciary duty).

> plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions…. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss…. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief."

*Iqbal,* 129 S.Ct. at 1949-50 (internal citations omitted). Because Defendants have failed to allege sufficient facts to support a Section 405(a)(1) claim, even if brought on behalf of a plan or plan participants (rather than as culpable fiduciary under nonexistent causes of action), Defendants' counterclaims should be dismissed.

### a. Defendants Do Not Allege that Plaintiffs Participated in or Undertook to Conceal Defendants' Breaches of Fiduciary Duty

To make a claim based on Section 405(a)(1), the NT Defendants first are required to allege that the Plan Committees *participated in* or *undertook to conceal* the Defendants' breaches of fiduciary duty. It is not sufficient for the NT Defendants to simply allege that Plaintiffs had knowledge of their actions, since such allegations would eliminate any difference between Section 405(a)(1) and Section 405(a)(3). Compare 29 U.S.C. § 1105(a)(1) (creating liability if the co-fiduciary "participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary") with 29 U.S.C. § 1105(a)(3) (creating liability if the co-fiduciary simply has "knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach"). Here, while Defendants allege some

13

"facts" regarding what Plaintiffs knew (or should have known) about how Defendants exercised their discretion over the securities lending program, Defendants never allege that Plaintiffs participated in or undertook to conceal Defendants' discretionary decisions.  (*See* Countercl. ¶ 35 (alleging simply that "the Plan Committees knew that (i) cash collateral received from securities lending was not invested in the types of securities in which they now say they thought they were invested; and (ii) the Collateral Pools would not have the type of liquidity that they now say they thought they would have"); Countercl. ¶ 38 (alleging only that "the Plan Committees knew…the extent of the lending of [the Collective Funds]").)

Nor are the conclusory allegations of Plaintiffs' participation in or concealment of Defendants' discretionary investment decisions even remotely plausible.  *See Iqbal*, 129 S. Ct. at 1949 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation omitted).  Plaintiffs were only required to monitor Defendants' performance in matching the benchmark indexes.  *See* 29 C.F.R. § 2509.75-8 at FR 17 (stating that the appointing trustee has the responsibility to review "the performance" of the investment manager at reasonable intervals).  Plaintiffs had no obligation to review Defendants' decision-making process or the individual investment decisions, and certainly did not "participate in" such decisions.  *See* 29 U.S.C. § 1105(d)(1) (stating that a trustee that hires an investment manager has no obligation "to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager").

> **b.  Defendants Do Not Allege Facts that Plaintiffs Knowingly Participated in or Concealed Defendants' Breaches of Fiduciary Duty**

Defendants do not allege facts that Plaintiffs participated *knowingly* in, or *knowingly* undertook to conceal, an act or omission of Defendants.  *See* 29 U.S.C. § 1105(a)(1).  Rather, to

the extent that the NT Defendants have alleged that Plaintiffs had "knowledge" of Defendants'

actions, Defendants' allegations are nothing more than a formulaic recitation of an element of

liability under Section 405(a)(1). *See Iqbal*, 129 S. Ct. at 1951 (holding that respondent's

allegation that petitioners "knew of, condoned, and willfully and maliciously agreed to subject

[him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his]

religion, race, and/or national origin and for no legitimate penological interest" were simply bare

assertions that amounted to a formulaic recitation of the elements of the claim and, as such, were

conclusory and not entitled to be assumed true). Defendants have not alleged any facts to

support their conclusory allegations regarding Plaintiffs' intentional participation in or

concealment of Defendants' misconduct. Indeed, in at least one place, Defendants even admit

that Plaintiffs may not have had the requisite knowledge to support liability based on Section

405(a)(1). (*See* Countercl. ¶ 32 (alleging that "the Plan Committees knew, *or should have*

*known*, of the material attributes of NTC compensation and responsibility, if any, for losses in

connection with securities lending services").)

> **c.** **Defendants Do Not Allege that Plaintiffs Knew that**
> **Defendants' Acts Constituted a Breach of Fiduciary Duty**

Defendants are also required to allege that Plaintiffs participated knowingly in, or

knowingly undertook to conceal, an act or omission of the NT Defendants, *knowing such act or*

*omission was a breach*. 29 U.S.C. § 1105(a)(1). Here, Defendants never allege that Plaintiffs

knew that that Defendants' actions were in breach of their fiduciary duties. Rather, Defendants

allege that Plaintiffs had knowledge of facts that, in and of themselves, do not constitute a breach

of fiduciary duties. (*See e.g.* Countercl. ¶ 38 (alleging that the "Plan Committees knew that

neither the Declaration of Trust, nor the Fund Declarations, nor the IMAs imposed caps on the

extent of securities lending"); Countercl. ¶ 41 (alleging that the "Plan Committees knew the

15

duties and roles of NTI under the IMAs and the Declaration of Trust"); Countercl. ¶ 43 (alleging

that the "Plan Committees knew…the duties and roles of NTC and NTI in connection with the

funds' securities lending activities").)  As noted above, it was not the discretion granted to

Defendants, but rather their imprudent and undisclosed decisions exercising their discretion, on

which Plaintiffs' claims are based.  Defendants did not breach their fiduciary duties simply by

having discretionary authority as the investment manager and the trustee.  Thus, Defendants have

failed to allege Plaintiffs' knowledge that Defendants' actions constituted a breach.

### B. Defendants Have Not Pleaded a Claim under Section 409

Defendants' remaining allegations assert that Plaintiffs breached their fiduciary duties by

failing to conduct sufficient due diligence or monitoring of Defendants to prevent the Defendants

from breaching their duties.  Defendants repeatedly allege that if they are found liable, then the

Plan Committees' actions "would amount to inadequate due diligence and investigation at the

time of making the investment or selecting it as an investment option, and in monitoring it

thereafter, and would constitute a failure to administer the trust investment diligently and

prudently, and for those reasons, among others, would violate the Plan Committees' duties under

ERISA." (Countcl. at ¶¶ 31, 34, 37, 40, and 44.)  These allegations apparently are based on

Section 409.  29 U.S.C. § 1109 (providing statutory standard for liability for breach of fiduciary

duty under ERISA).  Claims based on Section 409, however, must be made on behalf of the plan

as a whole, and not for the benefit of an individual participant, beneficiary or fiduciary.  *Russell*,

473 U.S. at 144 ("the entire text of § 409 persuades us that Congress did not intend that section

to authorize any relief except for the plan itself").

In this case, Defendants do not purport to bring their "Section 409" counterclaims for the

benefit of the Plans as a whole.  (Countercl. ¶¶ 49-51, 55-58.)  Indeed, Defendants' claims for

indemnification and contribution are nothing more than an attempt to shift all or part of their

liability for their own wrong-doing. If this Court finds that Defendants are liable for breaches of their fiduciary duties, the Plans and Plan participants will be made whole by the award against Defendants. The only beneficiaries of Defendants' indemnification and contribution counterclaims would be Defendants themselves. As such, these counterclaims are not permitted by Section 409 and should be dismissed. *E.g.*, *Radutzky v. Wallert*, No. 87 C 4340, 1988 U.S. Dist. LEXIS 15152, at *7 (E.D.N.Y. Dec. 30, 1988) (dismissing counterclaims for joint and several liability that defendant fiduciary purported to bring on behalf of the plan under Section 409 because "in asserting plaintiff's joint and several liability, defendants [did] not seek to recover additional funds for the Funds. Rather, they [sought] to diminish their own exposure by apportioning some of the liability to plaintiffs.")

Defendants' allegations based on ERISA Section 409 also are implausible on their face. It simply does not logically follow that Plaintiffs' decision to grant Defendants discretion to conduct securities lending operations could constitute "a primary and active breach of trust and fiduciary duty by [Plaintiffs] such that they are substantially more at fault than [Defendants]," who breached their fiduciary duties in exercising that discretion. (See Countercl. ¶ 44). Accordingly, such allegations fail the *Iqbal* plausibility test and are insufficient to state a claim.

In summary, Defendants' allegations based on ERISA Sections 405 and 409 fail to meet principles established by *Iqbal*. Defendants fail to allege necessary elements of their claims, allege legal conclusions as facts, or allege facts which are implausible on their face. As Defendants' allegations are sufficient to state a claim under *Iqbal*, the Counterclaims should be dismissed.

## CONCLUSION

When Plaintiffs sought to withdraw the Plans' assets from Defendants' control upon Defendants' disclosures in the fall of 2008, Defendants held such assets captive, and now they

try to hold *Plaintiffs* accountable for *their* misconduct.  For the reasons set forth in this

memorandum, the Court should grant Plaintiffs' Motion to Dismiss Defendants' Counterclaims.

Respectfully submitted,


s/  Keith P. Schoeneberger
Keith P. Schoeneberger

Michael H. King
Keith P. Schoeneberger
Therese K. Nohos
Bryan M. Westhoff
DEWEY & LEBOEUF LLP
180 North Stetson, Suite 3700
Two Prudential Plaza
Chicago, IL  60601-6710
Telephone:  312-794-8000
Facsimile:   312-794-8100

**PLAINTIFFS' COUNSEL**

## EXHIBIT LIST

| | |
|---|---|
| Exhibit A | William M. Landes & Richard A. Posner, *The Economic Structure of Tort Law* 201-04 (1987). |
| Exhibit B | Cases Published in Electronic Databases |

<u>**CERTIFICATE OF SERVICE**</u>

I, Keith P. Schoeneberger, an attorney for Plaintiffs BP North America, Inc

Savings Plan Investment Oversight Committee and BP Corporation North America, Inc.

Investment Committee, certify that on July 29, 2009, I caused a copy of the ***Plaintiffs'***

***Memorandum in Support of Motion to Dismiss Defendants' Counterclaims*** to be

electronically filed with the Clerk of the Court using the CM/ECF system, which will

send a copy of the foregoing via e-mail to: Caryn L. Jacobs at

cjacobs@mayerbrown.com, John J. Tharp Jr. at jtharp@mayerbrown.com, and Michelle

L. Odorizzi at mordorizzi@mayerbrown.com.


By: */s/ Keith P. Schoeneberger*
                  Keith P. Schoeneberger