

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BP CORPORATION NORTH AMERICA INC. SAVINGS PLAN INVESTMENT OVERSIGHT COMMITTEE serving in its capacity as a named fiduciary of the BP Employee Savings Plan, the BP Capital Accumulation Plan, the BP DirectSave Plan, the BP Employee Savings Plan of Puerto Rico, and the BP Partnership Savings Plan under the BP Master Trust for Employee Savings Plans and the BP Solar Employee Savings Plan under the Trust for the BP Solar Employee Savings Plan, and BP CORPORATION NORTH AMERICA INC. INVESTMENT COMMITTEE serving in its capacity as a named fiduciary of the BP Retirement Accumulation Plan and the Enstar Corporation Retirement Plan under the BP Master Trust for Employee Pension Plans, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | Judge William J. Hibbler |
| Plaintiffs/Counter-Defendants, | ) ) | |
| | ) | CIVIL ACTION NO. 08-cv-6029 |
| v. | ) ) ) | |
| NORTHERN TRUST INVESTMENTS, N.A. and THE NORTHERN TRUST COMPANY, | ) ) ) ) | |
| Defendants/Counter-Plaintifffs. | | |

MEMORANDUM OPINION AND ORDER

Two investment Committees (the Committees), acting in their capacity as fiduciaries for

several pension plans for present and former employees of BP Corporation North America, Inc. (the

Plans), sued Northern Trust Investments (NTI) and the Northern Trust Company (NTC) alleging

numerous ERISA, 29 U.S.C. § 1001 *et seq.*, violations related to NTI and NTC's securities lending

program. NTI and NTC have filed a counterclaim against the Committees for contribution and

indemnification. The Committees move to dismiss, arguing that ERISA contains no implied right of contribution or indemnification for co-fiduciaries and that even if it does, NTI and NTC have failed to state a claim.

## I. Factual Background

A brief factual backdrop is necessary to provide the proper context for this dispute. The Committees oversee the pension funds for retired and current employees of BP Corporation and serve as the named fiduciary of several plans available to those employees. (Counterclaim ¶¶ 3-4). Among their responsibilities, the Committees must invest the funds contained in those plans, which includes selecting and retaining investment managers and establishing investment guidelines for such managers. (Counterclaim ¶ 5).

In pursuit of their responsibility to invest the funds contained in the plans, the Committees entered into several Investment Manager Agreements (IMAs) with NTI. (Counterclaim ¶ 9). The IMAs directed NTI to invest plan assets in certain Securities Lending Index Funds (Lending Index Funds) managed by NTI. (Counterclaim ¶ 10). Numerous other pension and savings plans invested in these Lending Index Funds, which were governed by a Declaration of Trust that made NTI the trustee of each Fund. (Counterclaim ¶ 12). Each pension plan that invested in one of the Lending Index Fund owned "units" in that Fund, which reflected the gains or losses of that fund. (Counterclaim ¶ 13).

NTC served as the lending agent for NTI's securities lending activity. (Counterclaim ¶ 23). In short, NTI, through NTC lent the securities in the Lending Index Funds to borrowers in exchange for collateral that would be invested in fixed income securities. (Counterclaim ¶ 20). NTC invested the majority of the collateral for the Lending Index Funds at issue in this case in two collateral pools:

the Core USA pool and the collective short term investment fund and the collective short term extendible portfolio (STIF/STEP Pool). (Counterclaim ¶¶ 22). Problems arose when the collateral pools collapsed amidst a market crisis.

In response to a plummeting stock market and the freezing of the credit market, NTC declared a "collateral deficiency" in the collateral pools in 2008. NTC further imposed safeguards on the Lending Index Funds that limited the conditions under which a participating plan could withdraw its assets from the Fund. These withdrawal guidelines ultimately impacted the Committees, who objected to receiving a portion of their investment in collateral pool assets. The Committees further alleged that NTI and NTC breached their fiduciary duty to the Plans by engaging in imprudent lending of the securities and imprudent investing of the collateral. Finally, the Committees alleged that NTI and NTC did not adequately disclose the losses resulting from the securities lending program or the conflict of interest created by the securities lending program.

In their Counterclaim, NTI and NTC allege that the committees also served as a fiduciary to the Plans. NTI and NTC argue that if NTI or NTC did breach any fiduciary duty that the Committees also breached a fiduciary duty to the Plans by failing to obtain sufficient information or act upon the information that they did obtain. Consequently, NTI and NTC seek indemnification and contribution from the Committees.

## II. Analysis

NTI and NTC do not make clear in their pleading any specific statutory basis for their claims, instead asserting ERISA allows for indemnification or contribution claims. In their response to the motion to dismiss, NTI and NTC suggest not only that such claims can be found in the federal common law but also that the Committees would be liable to the Plans for a breach of fiduciary duty

under Section 409 of ERISA and that they may be liable for any fiduciary breaches by NTI or NTC

under Section 405(a)(1)-(3) of ERISA. Section 405(d), however, expressly limits the availability

of any such remedy. Where fiduciaries have appointed investment managers, they are insulated from

liability pursuant to Section 405(a)(2)-(3). 29 U.S.C. § 1105(d). Consequently, only Sections

405(a)(1) & 409 might allow for a remedy for NTI and NTC, and the Court will focus its analysis

on those Sections.

The starting point for this motion to dismiss is the Seventh Circuit's decision in *Free v.*

*Briody*, 733 F.2d 1331 (7th Cir. 1984). In *Free*, the district court had found that co-trustees of an

ERISA retirement plan had breached their fiduciary duties under ERISA, though one trustee's breach

was one of omission rather than commission. *Free*, 732 F.2d at 1333. The Seventh Circuit asked

whether "a right to indemnity . . . is provided by ERISA or the federal common law." *Id.* at 1336.[1]

The Seventh Circuit first looked to Section 405 of ERISA, noting that 405(a) sets forth the

circumstances under which a fiduciary may be liable for a co-fiduciaries breach. *Id.* at 1335; *see also*

29 U.S.C. § 1105(a). Section 405 also allows a trustee to limit exposure to breaches by co-

fiduciaries by allocating specific responsibilities among the co-fiduciaries. *Free*, 732 F.2d at 1336;

*see also* 29 U.S.C. § 1105(b)(1)(B). In *Free*, the fiduciary seeking indemnification had committed

an act of nonfeasance, but had not availed himself of the protections of Section 405(b)(1)(B). *Free*,

732 F.2d at 1336. The Seventh Circuit thus asked whether ERISA allowed for any other remedy.

*Id.*

---

[1] Indeed, the Seventh Circuit had previously recognized, albeit in dicta, that "a fiduciary may seek indemnification or contribution from co-fiduciaries in accordance with 29 U.S.C. § 1105(a)." *Alton Memorial Hospital v. Metropolitan Life Insurance Co.*, 656 F.2d 245, 250 (7th Cir.1981).

The court turned then to Section 409 which makes fiduciaries "'subject to such other equitable or remedial relief as the court may deem appropriate'" and Section 502(a)(2) which allows fiduciaries to bring a civil action for appropriate relief under Section 409. *Id.* (quoting 29 U.S.C. § 1109(a)); *see also* 29 U.S.C. §§ 1109(a), 1132(a)(2). The court noted that Section 409 gave courts considerable equitable powers to shape awards to "protect trustees from being ruined by the actions of their co-fiduciaries." *Id.* at 1338. In this interpretation of Section 409, the court held that Congress intended it to codify the principals of trust law, which allowed a passive trustee the right of indemnity against the more blameworthy trustee. *Id.* The court concluded that indemnification was within the court's equitable powers with respect to the "limited circumstances of this case," where one co-trustee "fault was nonfeasance" and who was a "bystander." *Id.* at 1337-38. In so holding, the Seventh Circuit made clear, however, that the district court should fashion the indemnification remedy such that the plan beneficiaries would not be adversely affected. *Id.* at 1338.[2]

Shortly after the Seventh Circuit decided *Free*, the Supreme Court addressed whether Section 409 authorized an award of extracontractual damages to a beneficiary. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145, 105 S.Ct. 3085, 87 L. Ed. 2d 96 (1985). The Supreme Court held that, when considering the entire context of Section 409, it was clear that the section emphasized "the relationship between the fiduciary and the plan." *Russell*, 473 U.S. at 140. Consequently, the

---

[2] In addition, the Seventh Circuit has often suggested in dicta that contribution is available under ERISA. *Alton Memorial Hosp. v. Metropolitan Life Ins. Co.*, 656 F.2d 245, 250 (7th Cir. 1981); *Donovan v. Robbins*, 752 F.2d 1170, 1178 (7th Cir. 1985); *Lumpkin v. Envirodyne Indus. Inc.*, 933 F.2d 449, 464 (7th Cir. 1991); *see also Summers v. State Street Bank & Trust Co.*, 453 F.3d 404, 413 (7th Cir. 2006) (observing that the right of contribution in the Seventh Circuit is an open question).

Court held that extracontractual damages to a beneficiary were not among the remedies envisioned by Congress and instead that only those remedies "that would protect the entire plan" fell within the ambit of Section 409. *Russell*, 473 U.S. at 141.   The Supreme Court held that the text of the section "persuade[d them] that Congress did not intend that section to authorize any relief except for the plan itself." *Id.* at 144.  The Court observed that given ERISA's comprehensive enforcement scheme it would not engraft a remedy onto the statue. *Id.* at 145-47.  The Supreme Court has since reiterated its expressed reluctance to "tamper with ERISA's enforcement scheme." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 122. S.Ct. 708, 151 L. Ed. 2d 635 (2002).

Since the Supreme Court decided *Russell*, the Seventh Circuit has not returned to the question of whether ERISA contains an implied right of indemnification.  Courts in this district that have addressed the issue post-*Russell* have split over whether ERISA contains an implied right to indemnification or contribution.[3]  Those courts that have found such a right to indemnification, however, fail to address *Free*'s reliance upon Section 409 and the Supreme Court's subsequent decision in *Russell* limiting claims under Section 409 to those that benefit the plan itself.   Instead, these decisions rest their holdings upon the dicta in *Alton* that a "fiduciary may seek indemnification or contribution from co-fiduciaries in accordance with 29 U.S.C. § 1105(a)." *Alton*, 656 F.2d at 250; *see, e.g., National Production Workers Union Ins. Trust v. Harter*, No. 07 C 6135, 2009 WL 1875756, *2 (N.D. Ill. Jun. 24, 2009) (finding a right to indemnification under § 1105 and citing *Alton* but not *Free*); *United Labs Inc. v. Savaiano*, No. 06 C 1442, 2007 WL 4162808, at *8 (N.D.

---

[3] Courts in other circuits are similarly split. *Travelers Cas. and Sur. Co. of Am. v. Iasa Servs., Inc.*, 497 F.3d 862, 866 (8th Cir. 2007) (no implied right to contribution under ERISA); *Kim v. Fujikawa*, 871 F.2d 1427 (same); *Chemung Canal Trust Co. v. Sovran Bank/Md.*, 939 F.2d 12, 15-18 (2d Cir. 1991) (recognizing contribution and indemnity claims among ERISA fiduciaries).

Ill. Nov. 19, 2007) (finding a right to indemnification under § 1105 and citing *Alton* but not *Free*); *Enenstein v. Eagle Ins. Agency*, Inc., No. 06 C 627, 2006 WL 3267687, *4 (N.D. Ill. Nov. 8, 2006)(citing *Free* but finding right to indemnification under § 1105). Indeed, *Enenstein*, recognizes that "third-party plaintiffs cannot recover individual relief under Section 1109," but must instead seek relief for the plan. *Enenstein*, 2006 WL 3267687, at *3. Other cases find a right to contribution, but recognize generally that the precedent relied upon is dicta and that the question remains unsettled in this circuit. *See Trustees of the Automobile Mechanics Local No. 701 Pension and Welfare Funds v. Union Bank of California, N.A.*, 630 F. Supp. 2d 951 (N.D. Ill. 2009) (finding right to contribution among co-fiduciaries); *Daniels v. Bursey*, 329 F. Supp. 2d 975 (N.D. Ill. 2004) (finding right to contribution among participating non-fiduciaries).

On the other hand, those courts that refuse to recognize an implied right to indemnification or contribution under ERISA discuss both *Free*'s discussion of Section 409 and the Supreme Court decision in *Russell* that undercuts that holding. *Mutual Life Ins. Co. of New York v. Yampol*, 706 F. Supp. 596, 599-600 (N.D. Ill. 1999) (finding no right to contribution under ERISA); *see also Plumbers Local 93 Health and Welfare and Pension Fund v. DePietro Plumbing Co.*, No. 94 C 7378, 1999 U.S. Dist. Lexis 6913 (N.D. Ill. Apr. 30, 1999) (finding no right of contribution under ERISA); *Bartz v. Carter*, No. 88 C 5793, 1991 U.S. Dist. LEXIS 11020 (N.D. Ill. Aug. 6, 1991) (finding no right of contribution or indemnification under ERISA). The Court finds the reasoning in *Yampol*, *DePietro Plumbing*, and *Bartz*, noting the Supreme Court's decision in *Russell*, to be persuasive. *Russell* makes clear that the equitable remedies described in the catch-all provision of Section 409 are those that are necessary to protect the *plan's* interest, such as allowing a fiduciary

7

to seek the removal of a co-fiduciary. *Russell*, 473 U.S. at 142. In so holding, *Russell* severely undercuts the holding of *Free*.

Against this legal landscape, the Court turns first to the question of whether the Supreme Court's holding in *Russell* invalidates or overturns the Seventh Circuit's decision in *Free*, for if it does then NTI and NTC's position that an implied right to indemnification or contribution can be found pursuant to Section 502(a)(2) and Section 409 or in the federal common law must be rejected. NTI and NTC first argue, correctly, that *Russell* did not mention *Free* and also that *Russell* did not examine whether Section 409 of ERISA contained an implied right to indemnification. That distinction, however, does not end the Court's inquiry. It is true that lower courts are obligated to follow settled precedent, even when they have "grave doubts" in light of later opinions that undercut the precedent, but do not expressly overrule it. *Eberhart v. United States*, 406 U.S. 12, 19-20, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (noting that nevertheless courts should not bury their concerns); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). NTI and NTC's reading of *Russell*, however, appears overly narrow.

Even though *Russell* did not explicitly mention *Free*, it held quite clearly that the recovery for a violation of Section 409 must "inure to the benefit of the plan as a whole" and "Congress did not intend that section to authorize any relief except for the plan itself." *Russell*, 473 U.S. at 140, 144. *Free* depended entirely on the equitable remedies described in Section 409's catch-all provision. *Free*, 732 F.2d at 1337-38. More importantly, *Free* held that individuals (namely co-fiduciaries) could utilize such remedies for their own benefit. *Id.* *Russell* thus seems to squarely invalidate the holding in *Free*. *Russell*, 473 U.S. at 144. This Court may not overturn Seventh Circuit precedent. Nor can this Court assume simply from dicta in other Seventh Circuit opinions

8

that a prior holding rests on tenuous grounds.   When the Supreme Court's opinion squarely contradicts the Seventh Circuit's holding, however, this court must consider whether the lower court's opinion has been overruled.  In this case, the Court need not rest its decision upon whether *Russell* invalidates *Free*, though it seems to do so, for the Court can reach its decision on other grounds.

NTI and NTC spend so much effort in arguing that *Russell* did not undermine *Free* that they neglect to present a compelling argument that *Free* applies in the first instance.  NTI and NTC argue that the Seventh Circuit in *Free* endorsed a general implied right to contribution or indemnification under ERISA.  *Free*, however, did not make such a broad statement.  Instead, *Free* held that ERISA contained a right to indemnification *with respect to the limited circumstances* of that case.  *Free*, 732 F.2d at 1337-38.  As noted earlier, *Free* involved a fiduciary who had committed an act of nonfeasance who sought indemnification from a co-fiduciary more culpable than he.  *Id.* *Free* made clear that it found an implied right to indemnification where a *passive* trustee seeks indemnification form a more culpable *active* trustee.  *Id.* That is not the case here.

In this case, NTI and NTC suggest that, assuming the Committees prove their claims against NTI and NTC, the Committees failed to obtain and understand sufficient information before making investments with them, that the Committees did not conduct sufficient due diligence prior to investing with them, and that the Committees did not properly oversee NTI and NTC's activities. (Counterclaim ¶¶ 31-45).  Each of these allegations, however, describes an act of nonfeasance and not one of malfeasance.  Here, NTI or NTC was the more active fiduciary — managing the Lending Index Funds, investing the collateral obtained from the Lending Index Funds, defining the rules for the withdrawal from the Lending Index Funds.  On the other hand, even according to NTI and NTC's

allegations, the Committees merely failed to monitor their activities or acquire sufficient information to make their decisions. The Seventh Circuit in *Free* did not hold that ERISA allowed for an unlimited right to indemnification between co-fiduciaries under any circumstance. *Free*, 732 F.2d at 1337-38. Instead, *Free* found a limited right to indemnification under ERISA where a passive trustee seeks indemnification from an active trustee. *Id.* The Court holds that NTI and NTC's Counterclaim does not invoke those limited circumstances. In short, *Free* is not applicable here.[4]

Even if this Court were to hold that *Free* set forth an unlimited right to contribution or indemnification under ERISA, the Court would nonetheless dismiss NTI and NTC's Counterclaims. The Committees brought their claims in their collective institutional capacities, as named fiduciaries for the Plans. By filing a *counterclaim*, as opposed to a *third-party complaint*, NTI and NTC pursue their claims against the Committees in their institutional capacities. Thus, if the Court were to allow NTI and NTC to pursue these claims and were successful in pursuit of these claims, the judgment would reduce the amount of the Plans' recovery. Clearly, ERISA prohibits such a remedy. 29 U.S.C. § 1109; *Free*, 732 F.2d at 1337-38 (holding that court may shape its award to protect beneficiary from loss resulting from indemnification or contribution claim).

*Union Bank* makes this distinction clear:

> On June 29 this Court dealt with that subject orally, pointing out at the outset that Union Bank's counsel had mistakenly conceptionalized its potential rights by bringing what counsel characterized as a Counterclaim rather than as a Third Party Complaint—after all, this action was brought by Trustees in their collective *institutional* capacity, while the so-called Counterclaim sought to impose *individual* liability on the Trustees because they had assertedly violated their own fiduciary obligations to the Pension and Welfare Funds

---

[4] This same reasoning also demonstrates that a remedy under § 405(a)(1) is unavailable, for that section requires active participation in a co-fiduciaries breach. 29 U.S.C. § 1105(a)(1). NTI and NTC make no allegations that the Committees somehow participated in the decisions to manage the Index Lending Funds or the collateral pools.

("Funds"). That meaningful distinction should have been apparent to Union Bank's counsel, for they were admittedly not seeking to reduce the amount of the Funds' potential recovery (which would have been the consequence of a true Counterclaim), as contrasted with attempting to shift some of Union Bank's liability for that recovery to the individual Trustees (as might be appropriate if both Union Bank and those individuals had been guilty of breaching their respective fiduciary obligations).

*Union Bank*, 630 F. Supp. 2d at 952 (emphasis in original).

Having relied heavily on *Union Bank* in support of their position, NTI and NTC should have been alert to this distinction. As it stands, NTI and NTC's counterclaim would serve only to reduce the potential recovery to the Plans is thus irreparably flawed.

The Court holds that NTI and NTC's counterclaim is not within the scope of indemnification or contribution claims allowed under *Free*, even if *Free* remains good law. Further, the Court holds that a counterclaim would not have been the appropriate vehicle to seek indemnification or contribution from a co-fiduciary even if ERISA permitted such claims. Consequently, the Court GRANTS the Committees' Motion to Dismiss.

IT IS SO ORDERED.

_____2/10/10_____
Dated

Hon. William J. Hibbler
U.S. District Court

11